PEOPLE *v.* TODARO.

SAME *v.* DE PIAZZI.

1. CRIMINAL LAW—WITNESSES.
   People are under no obligation to produce unknown witnesses.

2. SAME—INDORSING NAMES OF WITNESSES.
   There was no error in indorsing as witness on information during trial name of one of the officers making arrest (Act No. 175, Pub. Acts 1927, chap. 7, § 40).

3. SAME—COMMENTS OF JUDGE—TRIAL.

> There was no error in trial court's comments on evidence, where jury were informed that they were advisory merely, that jury were sole judges of facts, and that they had full power to use their own judgment as to facts and testimony without necessarily following anything trial judge might say.

4. SAME—EVIDENCE—HEARSAY.

> In prosecution for robbery armed, testimony by officer arresting defendant that some one in room where robbery occurred remarked, referring to defendant as one of the robbers, "That is one of them," was admissible if made by one of the robbers or one of the robbed.

5. SAME—EVIDENCE—STATEMENTS MADE IN PRESENCE OF ACCUSED.

> Statements made in presence or hearing of party to be affected thereby under circumstances from which his acquiescence in their truth may be fairly inferred, though not expressed, are admissible in evidence and entitled to consideration by jury in accordance with what they find to be facts.

6. SAME—EVIDENCE—IRRESPONSIVE ANSWER.

> Voluntary and irresponsive answer to proper question does not ordinarily constitute error.

7. SAME—REQUEST TO CHARGE—MISCARRIAGE OF JUSTICE.

> Where no request to charge was made in relation to irresponsive answer to proper question, case is not reversed therefor; especially where it does not affirmatively appear that miscarriage of justice resulted therefrom (3 Comp. Laws 1929, § 17354).

> BUTZEL, C. J., and WIEST, J., dissenting in part.

Error to Wayne; Miller (Guy E.), J. Submitted October 16, 1930. (Docket Nos. 160, 161, Calendar Nos. 35,047, 35,048.) Decided February 27, 1931. Rehearing granted Todaro June 1, 1931.

Joseph Todaro and Dominick De Piazzi were convicted of robbery armed. Affirmed.

*Chawke & Sloan,* for appellant Todaro.

*Frank S. Valenti* and *Donald McGaffey,* for appellant De Piazzi.

*Wilber M. Brucker,* Attorney General, *James E. Chenot,* Prosecuting Attorney, and *Donald F. Welday,* Assistant Prosecuting Attorney, for the people.

POTTER, J. Defendants were informed against, tried jointly with other defendants, convicted of robbery armed, and bring error.

October 27, 1929, at 3848 High Street, Ecorse, a house of prostitution and cabaret was in operation and many of its inmates and patrons present. At about 1:45 a. m., at an apparently concerted signal, the inmates and patrons were held up and robbed. The police were called, five officers responded, several arrests were made, and a part of the spoils of the robbery recovered. Defendants were present at the time of the robbery. De Piazzi claims he was there as a patron, did not participate in the robbery, but was himself held up and robbed. He denied acquaintance with the other defendants and testified he was arrested in the front room of the house, where he was talking with a girl. The officer making the arrest testified he was arrested on the front porch, behind a swinging hammock, near which, soon afterwards, a revolver was found. De Piazzi was searched after his arrest but nothing was found on him. Todaro, after the officers arrived, was seen hiding behind the door of a lavatory. A pistol was found on a washboard of a sink past which Todaro went from the room where the holdup and robbery took place to this lavatory. Todaro denied acquaintance with the other defendants, protested his innocence, claimed he heard a shot; and hid because he thought there was a raid or a holdup. He was searched but nothing found on him.

The other defendants who were jointly indicted with De Piazzi and Todaro, denied acquaintance

with each other or with De Piazzi and Todaro, participation in the robbery, and protested their innocence.

It is claimed the people failed to produce all the *res gestæ* witnesses whose testimony was not cumulative. The record does not show who these witnesses were. No subpœna was refused defendants. The people sought to subpœna several witnesses, claimed to have been present at the holdup and robbery, but were unable to locate them. The people are under no obligation to produce unknown witnesses.

The court charged the jury:

"It is the duty of the people to produce all available eyewitnesses or excuse their nonproduction in a proper way. It was the duty of the people to produce the witnesses whose names are indorsed on the information. Certain of those witnesses have not been produced. There has been testimony here offered of efforts to locate these witnesses with witness subpœnas for the purpose of bringing them into court and putting them on the stand in order that you might hear their stories. Now, if that was a reasonable effort, if the prosecution has shown reasonable pains to find those witnesses and bring them here, then that duty has been discharged. But if the prosecution has not used due diligence, and has failed to produce testimony which would be material and which would assist in unraveling this charge, then that duty has not been discharged. And that is a matter which it is fair and right for the members of the jury to take into consideration in determining the outcome of the case."

Complaint is made that the name of the witness Sage was indorsed on the information during the trial. The witness was one of the officers who made the arrest. His name should have been in-

dorsed on the information. Section 40, chap. 7, Act No. 175, Pub. Acts 1927 (3 Comp. Laws 1929, § 17254), provides:

"Names of other witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."

Under the circumstances the indorsement of the name of the witness Sage on the information was not error. *People* v. *Tamosaitis,* 244 Mich. 258.

In submitting the question of De Piazzi's guilt to the jury, the court charged that if they believed the testimony of the arresting officer, that defendant was arrested on the front porch, hiding behind the swinging hammock, they would be justified in concluding he sought refuge there and was hiding, and in coming to the conclusion the pistol found on the front porch near where he was arrested was his pistol, placed there by him when he was seeking to escape the officers and the responsibility for the holdup and robbery; but, that defendant disputed and denied the testimony of the officer as to the way in which the arrest took place and said he never had a pistol on his person and didn't take any part in the holdup.

The court further charged:

"It is for you to determine whether the fact is that he did run away and hide in that front room, whether it was his pistol, and whether he secreted the pistol there in order that he might not be found with it on his person. If you find that he did run away and that he did hide the pistol and that he did have a pistol then the fact of his seeking escape, the fact of his secreting himself and the fact of his having a pistol, are all circumstances which bear upon the question of guilt or innocence and which it is necessary for you to take into considera-

tion in determining the question of his connection with this affair."

The trial court's comments upon the evidence are criticized. In *People* v. *Lintz,* 244 Mich. 603, this court construing the statute (3 Comp. Laws 1929, § 17322), among other things, said:

"In expressing an opinion, he should make it clear to the jury that he is merely stating his opinion, and not directing them to be guided by it. They must be given to understand that they are to decide the facts on their own view of the evidence, and that the opinion is expressed only as an aid to them in so doing. He may call the attention of the jury to particular facts; marshal and sum up the evidence relating to each issue to be determined; comment upon the tendency, force, and comparative weight of conflicting testimony bearing upon them, and point out any matter which legitimately affects the testimony of a witness or his credibility. And it is his duty to do so, under the statute, when in his opinion their consideration by the jury is necessary and will lead to a just verdict, providing always that he makes it plain to the jury that his comment and opinion on the facts is not controlling, and that the ultimate determination is left to them. The material facts in controversy upon which there is a conflict of evidence must not be assumed by him to have been proven. It is for the jury to say whether or not the evidence is sufficient to establish such facts, and they are the sole judges of the credibility of the witnesses and the weight of the testimony."

The trial court in the instant case said:

"The members of the jury are the sole judges of the facts in the case, are the sole judges of the truth or falsity of all the testimony in the case and the opinion or comment of the judge in charging the

jury upon any question of fact is to be taken by the members of the jury as advisory merely. It is their full power and privilege to disagree with any such comment and disregard it. The comment of the trial judge in criminal cases on the testimony and evidence is merely advisory and you as members of the jury have full power, and I want you to remember it carefully during the entire charge because the entire charge on the facts is subject to this. The members of the jury have full power to use their own judgment as to the facts and the testimony without regard or without necessarily following anything that the trial judge may say.    *    *    *

"You are the sole judges of the testimony, of the facts. You are the sole judges of the truth of the testimony. You are the sole judges of the facts in the case. But, in endeavoring to sift out where the truth lies, it is reasonable and right that all of the testimony of all of the witnesses be compared. In passing upon the truthfulness of any witness or of all the witnesses, the stories that they tell are naturally to be considered. The way in which those stories are told is also to be considered. The intrinsic probability or improbability of what they say, of the stories as they tell them, is to be considered and the way in which the testimony of the witnesses accords with the probabilities and human experience and agrees with the other evidence in the case and with the testimony of other witnesses, are also matters to be considered. The interest which any witness has, and this applies to the officers in the case, to the witnesses and to the defendants, the interest which any witness has in the outcome of the case is to be considered as bearing upon the probability of his telling the truth or not telling the truth."

Error is assigned upon the failure to strike the answer of Lieutenant Sage to the effect that he

arrested appellant Todaro after he heard someone say, "That is one of them."

"*Q*. How did you happen to arrest this man?

"*A*. He was hiding behind the door there.

"*Mr. Tatti*: I object to that. He don't know of his own knowledge whether the man was hiding behind a door. I ask that the remark be stricken out.

"*The Court*: The answer may stand.

"He was in this lavatory alone—there was nobody in it, the door was open and he was back of the door.

"*Q*. How did you happen to go in there and look behind that door?

"*A*. We had five and I went in there and I found him and I brought him out and somebody says 'that is one of them.'"

Objection was made by defendants to this testimony and the court requested to strike it out. The refusal of the court to strike it is urged as error.

At the time of Todaro's arrest there were present, the police, the robbers, and the robbed. It is shown the remark objected to was not made by any of the officers. It must have been made by one of the robbers or one of the robbed. If by one of the robbers it was admissible, *People* v. *Dow*, 64 Mich. 717 (8 Am. St. Rep. 873); if by one of the robbed it was likewise admissible, *People* v. *Johnson*, 186 Mich. 516; *Merkle* v. *Twp. of Bennington*, 58 Mich. 156, 163 (55 Am. Rep. 666); *Herrick* v. *Wixom*, 121 Mich. 384; 2 Wigmore on Evidence (2d Ed.), § 1142.

When the statement was made "that is one of them" it does not appear Todaro said anything in response. He claims he was frightened at the time. He protested his innocence to the officers, as did defendants from whose possession the officers recovered the stolen property. The conduct, de-

meanor, and statements of all the defendants was similar. It was for the jury to say whether the statement was made in the presence and hearing of the accused under such circumstances that his acquiescence therein could be inferred from his conduct and demeanor and failure to reply or respond thereto. When statements are made in the presence or hearing of a party to be affected thereby under circumstances from which his acquiescence in their truth may be fairly inferred, though not expressed, they are admissible in evidence and entitled to little or much consideration by the jury in accordance with what they find to be the facts. 1 Greenleaf on Evidence (16th Ed.), § 197; 2 Wigmore on Evidence (2d Ed.), § 1072; 2 Wharton, Criminal Evidence (10th Ed.), § 679; *Dawson* v. *Hall,* 2 Mich. 389; *People* v. *Courtney,* 178 Mich. 137.

The answer complained of was not responsive to any question put to the witness Sage. It was a voluntary statement by him. The question asked the witness was proper. A voluntary and irresponsive answer to a proper question does not ordinarily constitute error. *People* v. *Wilson,* 133 Mich. 517. No motion was made to strike out the testimony because the answer was irresponsive. *People* v. *Meert,* 157 Mich. 93.

"A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge; and if what he does or says improperly is likely to do much mischief, it is presumed the judge will apply the proper corrective in his instructions if requested to do so." *People* v. *Mead,* 50 Mich. 228.

No request to charge was made, on behalf of defendant Todaro, to the trial court, in relation to this testimony. The witness was fully cross-examined

as to the source of this remark by counsel for defendant. It was apparent the witness knew little about the identity of the person who may have made it. The jury, during its deliberations, came into court and discussed various propositions. This does not appear to have been one of them.

Section 26, chap. 9, Act No. 175, Pub. Acts 1927 (3 Comp. Laws 1929, § 17354), provides:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

It does not affirmatively appear that this, or any of the other errors complained of, resulted in a miscarriage of justice. Judgment affirmed.

CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting in part*). Under the opinion in *People* v. *Wudarski, ante,* 83, I find no reversible error in De Piazzi's case.

In Todaro's case it was prejudicial error to permit the arresting officer to testify that, when he brought Todaro from the lavatory, some one, whom he did not see or know, said: "That is one of them." It was a hearsay accusation and identification by an unknown person, and, of course, there was no opportunity afforded to test the truth thereof.

Ages before, Sir Walter Raleigh, in 1603, was denied the right by Chief Justice Popham, to be confronted with his accusers; it was, and ever since then has been, the right of an accused, as declared by article 2, § 19, of the Constitution of Michigan, "to be confronted with the witnesses against him." Raleigh urged:

"If there be but a trial of five marks at common law, a witness must be deposed. Good my Lords, let my accuser come face to face, and be deposed."

Chief Justice Popham refused, and, in passing sentence, gave the following reason:

"It now comes in my mind, why you may not have your accuser come face to face: for such an one is easily brought to retract, when he seeth there is no hope of his own life." 1 Hargrave's State Trials (Ed. 1776), p. 212.

The hearsay testimony supplied the prosecution with an essential item of proof, singling out Todaro as a hold-up man and refuting his claim that he was a patron of the house.

For the error mentioned, Todaro's conviction should be set aside, and a new trial granted.

BUTZEL, C. J., concurred with WIEST, J.