PEOPLE *v.* DeBOLT.

1. CRIMINAL LAW—DEFENDANT'S FAILURE TO TESTIFY—INSTRUCTIONS.
    Court properly instructed jury that no inference of guilt could be drawn from failure of one charged with crime to take the stand as a witness.

2. SAME—STATEMENT OF ACCOMPLICE NOT UNDER OATH.
    Admission in evidence of statement to police officer by accomplice in bank robbery that defendant planned the affair made in presence of defendant who had previously denied complicity therein but to which he had nothing more to say *held*, prejudicial since it had the effect of putting before jury the statement of one not under oath nor subject to cross-examination.

3. SAME—SILENCE OF DEFENDANT AS TO COMPLICITY.

To render statement of complicity in crime admissible against accused, it must appear to have been made under circumstances calling for denial upon his part and from his silence an inference of assent thereto might be drawn.

4. SAME—SILENCE OF ACCUSED AS EQUIVALENT OF CONFESSION.

For silence of accused, after statement of complicity in a crime was made in his presence, to be equivalent to a confession, it must be shown he heard and understood the specific charge under such circumstances as to call for his denial.

5. SAME—EVIDENCE—DISCHARGE—AIDING AND ABETTING.

Although conviction of robbery armed may not be sustained because of prejudicial error in admission of testimony as to accomplice's statement implicating defendant, he may not be discharged even though no overt act on his part was shown where there is sufficient evidence from which a jury might find defendant did aid and abet others in committing crime and was an accessory thereto.

6. SAME—ACCESSORY—GUILT OF PRINCIPAL.

To sustain charge of accessory on part of defendant, the guilt of other defendants must have been established.

7. SAME—EVIDENCE—ACCESSORIES—ROBBERY.

Testimony tracing car of bank robbers from scene of crime to where found and occurrences at cottage they occupied with alleged accessory *held*, admissible to establish guilt of former on trial of latter for robbery.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted June 14, 1934. (Docket No. 132, Calendar No. 37,856.)  Decided October 1, 1934.

Harold DeBolt was convicted of robbery armed. Reversed and new trial granted.

*Raymond H. Dresser* and *Roy H. Hagerman,* for appellant.

*Patrick H. O'Brien,* Attorney General, and *George H. Arnold,* Prosecuting Attorney, for the people.

NELSON SHARPE, C. J.   The information filed herein charged the defendant Harold DeBolt and Vincent Minneci, Joseph McDonald and Henry Gerber with the robbery, while armed, of the First National Bank of Burr Oak on the 15th day of January, 1934. At the request of defendant he was granted a separate trial.

The evidence submitted clearly establishes the fact that the three defendants, other than DeBolt, entered the bank soon after nine o'clock in the morning of the day above stated and, with deadly weapons, held up the cashier and a number of others then present and stole therefrom about $600 in money.   While DeBolt was not then present, it is the claim of the prosecution that he had joined with the others in planning the robbery and was an accomplice in the commission of the crime.   He was convicted and sentenced to prison for a term not exceeding 25 years and not less than 10 years, and has appealed therefrom.

There is little dispute in the facts.   DeBolt did not take the stand as a witness.   The court very properly instructed the jury that no inference of guilt could be drawn from his failure to do so.

The evidence discloses that DeBolt, hereafter spoken of as the defendant, whose home was in the city of Sturgis, rented a cottage, with little furniture in it, near a lake about 13 miles from Burr Oak, on December 22 or 23, 1933, for 30 days; that while visiting in Chicago he invited the other defendants to be his guests at the cottage and they came there with him on January 5, 1934; that he entertained them while there; took them to some public places, ate some meals at restaurants and went to some billiard halls; that he was driving around with a friend on the night of the 14th and about four-thirty in

the morning of the 15th came to the cottage and remained there until the other defendants left about nine o'clock; that he stated that he felt "nervous;" that he "had a hunch when they left the cottage something was going to happen;" that the other defendants left in a Chrysler car, which had been stolen in the city of Kalamazoo the evening before, and driven by a man who has not been identified and who was seen driving towards Burr Oak and later returning therefrom; that soon after the robbery was committed notice thereof was sent out by radio and the members of the State police met the defendant driving his own car at some distance from the cottage and arrested him. One of them took the defendant to the post at White Pigeon. The others drove to the cottage where the other three defendants were found and, after an effort to escape on their part, they were also placed under arrest. Three pistols and a sawed-off shotgun were found in the cottage.

Later on the same day Philip L. Hutson, a detective with the State police, testified that he had a talk with defendant in which he denied that he had had anything to do with the commission of the crime. A little later, the defendant Minneci, who was also in custody, was questioned by Hutson, in the presence of defendant.

"I asked Minneci how long he had known DeBolt, he said, 'I had known him six days,' asked him where he met him, he says, 'I met him in Chicago,' I asked him how he happened to meet him, he says, 'I met him through Gerber,' I asked him when he had first heard of the Burr Oak bank, he says, 'When I first met him in Chicago,' I asked him 'Who cased the bank?'

"*The Court*: Who what?

"*A.* Who cased the bank.

"*The Court*: What do you mean by that term?

"*A.* It means the planning of the robbery. * * *

"And he said, 'Who do you think cased it,' and I said, 'It is not up to—it is not for me to think, I want you to tell me who cased the bank,' and he said 'He did,' we don't know anything about this country up here. * * *

"*The Court*: What do you mean by 'He did?'

"*A.* DeBolt."

That he then asked the defendant "if he had anything to say about it" and he answered, "No, I have not got anything more to say." Hutson was later asked, "Then Mr. DeBolt didn't consent to any such story, did he, that Minneci told?" and answered, "No, sir, he did not."

Error is assigned upon the admission of the statement of Minneci, over objection thereto, and refusal to instruct the jury that they should disregard it. In our opinion it was inadmissible and prejudicial.

In his instruction to the jury the trial court said:

"I charge you that the declaration of Mr. Minneci, in order to be considered by you as evidence against the respondent must be shown to have been made in Mr. DeBolt's presence and that he heard them and fully understood the statements and that he exhibited some act of the mind, or conduct, or demeanor which would show that he acquiesced in the truth of the statement. If you find that the respondent DeBolt denied the statements of Mr. Minneci, or by his acts, or demeanor showed that he did not acquiesce in it, then the statements of Mr. Minneci should be utterly disregarded by you."

The applicable rule of law is thus carefully stated but the record discloses "no act of the mind, or conduct or demeanor" of the defendant from which

the jury could find acquiescence on his part. He had theretofore stated to the officer that he had nothing to do with the robbery and, after Minneci's statement, said that he had nothing more to say. The effect of its admission was to place before the jury the statement of Minneci, not made under oath or subject to cross-examination.

To render such a statement admissible it must appear that it was made under circumstances not only permitting, but calling for a denial upon the part of one accused, and from whose silence an inference of assent thereto may be drawn. The officer, himself, apparently, drew no such inference.

"When statements are made in the presence or hearing of a party to be affected thereby under circumstances from which his acquiescence in their truth may be fairly inferred, though not expressed, they are admissible in evidence and entitled to little or much consideration by the jury in accordance with what they find to be the facts." *People* v. *Todaro,* 253 Mich. 367, 375.

"For silence to be equivalent to a confession, it must be shown that the accused heard and understood the specific charge against him, and that he heard it under circumstances not only permitting but calling on him for a denial, taking into consideration all the circumstances and the persons who were present." Underhill's Criminal Evidence (3d Ed.), § 208.

"If A, when in B's presence and hearing, makes a statement to which B listens in silence, interposing no objection, A's statement may be put in evidence against B whenever B's silence is of such a nature as to lead to the inference of assent." 2 Wharton, Criminal Evidence (10th Ed.), § 679.

Counsel for defendant urge that, if this testimony be excluded, there was no sufficient evidence of par-

ticipation by him in the robbery and that he should be discharged. While no overt act on his part was shown, there was competent evidence from which the jury might have found that he did aid and abet the other defendants in the commission of the crime and was an accessory thereto.

Error is assigned upon the admission of the testimony of witnesses who took part in tracing the Chrysler car from the scene of the robbery to the place where it was afterwards found. To sustain the charge of an accessory on the part of defendant, the guilt of the other defendants must have been established. This testimony, and that detailing what took place at the cottage at the time of their arrest, as heretofore stated, was admissible for that purpose.

The other errors have been given consideration but do not merit discussion.

The verdict and judgment is reversed and set aside and a new trial ordered. The defendant, if in custody, will be remanded to the county jail to await such trial.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL and EDWARD M. SHARPE, JJ., concurred.