PEOPLE v BOBO

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT—
   ARREST—WITNESSES—DIRECT EXAMINATION—IMPEACHMENT.

   Exercise of the constitutional right to remain silent at the time of
   arrest used against the accused at trial under the doctrine of
   impeachment by prior inconsistent statement constituted preju-
   dicial error where he made no allegations on direct examina-
   tion as to what was said or not said at the time of arrest.

2. CRIMINAL LAW—RIGHT TO REMAIN SILENT—CONSTITUTIONAL LAW—
   NONUTTERANCES—STATEMENTS—WITNESSES.

   Conduct which directly or indirectly restricts the exercise of the
   constitutional right to remain silent in the face of accusation
   will not be condoned by the Michigan Supreme Court; "nonut-
   terances" are not statements and the fact that a witness did
   not make a statement may be shown only to contradict his
   assertion that he did.

3. CRIMINAL LAW—SILENCE—EVIDENCE.

   A defendant's refusal to speak during interrogation is admissible
   only to impeach his own inconsistent statements at trial.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO REMAIN SILENT—
   ARREST.

   A defendant's Fifth Amendment right to remain silent is con-
   stant; whether his silence was prior to or at the time of arrest
   makes little difference (US Const, Am V).

5. CRIMINAL LAW—SILENCE—EVIDENCE.

   An accused's silence, even in the face of specific accusation of a
   crime, may not be used against him.

6. CONSTITUTIONAL LAW—CRIMINAL LAW—INTERROGATION—RIGHT TO
   REMAIN SILENT—ARREST.

   The Fifth Amendment guarantees that a person's silence may not

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 21 Am Jur 2d, Criminal Law §§ 349–355, 360.
[8] 21 Am Jur 2d, Criminal Law §§ 357, 367, 449.

be used against him whenever he is stopped for interrogation by the police, whether technically under arrest or not (US Const, Am V).

7. CONSTITUTIONAL LAW—CRIMINAL LAW—SILENCE—EVIDENCE—RES GESTAE.

The doctrine that silence in the face of accusation by an unidentified accuser might be shown as part of the res gestae and such silence be regarded as acquiescence in the truth of the charge is wholly at odds with the law defining our rights under the Fifth Amendment; *People v Todaro,* 253 Mich 367 (1931), is overruled (US Const, Am V).

### DISSENTING OPINION

T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ.

8. CRIMINAL LAW—MIRANDA WARNINGS—CONVERSATIONS WITH PO-LICE—EVIDENCE—CONSTITUTIONAL LAW.

Miranda *warnings are not required where a citizen is stopped on the street by a police officer, and no arrest, nor any accusation of crime is made, and conversations between them, including omissions or "nonutterances", if otherwise admissible in evidence, should not be excluded from evidence on Fifth Amendment grounds (US Const, Am V).*

Appeal from Court of Appeals, Division 1, Fitzgerald, P. J., and McGregor and O'Hara, JJ., affirming Recorder's Court of Detroit, Andrew C. Wood, J. Submitted April 4, 1973. (No. 11 April Term 1973, Docket No. 54,293.) Decided November 21, 1973.

41 Mich App 362 reversed.

Ned L. Bobo was convicted of entering without breaking with intent to commit larceny. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

T. G. KAVANAGH, J. The defendant, Ned Ladd Bobo, was arrested on June 5, 1968 and convicted of entering without breaking with intent to commit larceny in violation of 1931 PA 328, § 111, as amended by 1964 PA 133, § 1; MCLA 750.111; MSA 28.306. On June 26, 1972 the Court of Appeals affirmed his conviction.

The question before us as posed by defendant is as follows:

"Where an accused exercises his constitutional right to remain silent at the time of arrest, does the use of such silence against him at trial under the doctrine of impeachment by prior inconsistent statement constitute prejudicial error where he made no allegations on direct examination as to what was said or not said at the time of arrest?"

We answer in the affirmative.

When arrested by Detroit police officers Bobo exercised his constitutional right to remain silent[1] and made no statement.

At his trial when testifying on his own behalf Bobo stated on direct examination that just prior to his being arrested near the scene of the crime two men presumably potential suspects, ran past him from the general area of the crime.[2]

Bobo was not asked by his counsel and did not

---

[1] US Const, Am V; Const 1963, art 1, § 17.

[2] "Q. What did you see with reference to anybody running down the street toward you?

"A. I didn't see nothing but two men running past me."

volunteer whether or not he made any statement
to the police officers. However, the prosecutor over
timely objection by defense counsel was permitted
by the court to ask Bobo on cross-examination if
he had, at the time of his interrogation told the
officer about the two men who had run past him.[3]

The court also permitted the prosecutor to re-
mark during his closing argument to the jury that
Bobo had said nothing to the police about two men
running past him.[4]

The prosecutor urges that we allow the prosecu-
tion to impeach a defendant by questioning him
about what was said or not said to the police at
the time of arrest as part of the res gestae citing
*People v Noble,* 23 Mich App 100, 101; 178 NW2d
118, 119 (1970), or as an inconsistent "nonutter-

---

[3] *"Q.* Did you say anything to him [the questioning police officer]
about two other men running on the street?

*"A.* He didn't ask me.

*"Q.* I said did you say anything to him?

*"A.* No, I didn't.

*"Defense Counsel:* Before you answer that question, I do object to it.

                    *   *   *

*"Q.* My last question to you was did you tell the officer about these
two men running down the alley; your is answer is no?

*"A.* I don't recall."

[4] *"Prosecutor:* Oh yes, one of the defendants, yesterday said some-
thing about two other men. Two other men, as they were walking,
mind you, from the other direction, from what had been previously
testified to by three of the officers, they claim now were coming from
the other direction and two phantoms, two men who they claim ran
past them five or six feet past them ran down the ·alley. Yet within
five or six feet Edison and Ned Bobo who claimed they saw these two
men said nothing to the police.

*"Defense Counsel:* * * * If the Court please, at this point I move for
a mistrial on behalf of Ned Ladd Bobo on the ground that the
Prosecutor has violated that defendant's privilege against incrimina-
tion. The defendant Ned Ladd Bobo at the time of his interrogation
by Detective Berryman with the gun pointed at him being questioned
about a robbery had no duty whatsoever to speak to the detective
about anything. And his failure to speak to that cannot be held
against him. And I submit that I am intitled *[sic]* to a mistrial.

*"The Court:* I will deny the motion * * * ."

ance", citing *People v Calhoun,* 33 Mich App 141, 147; 189 NW2d 743, 746 (1971).

The use of a "nonutterance" as approved in *Calhoun* was analyzed and criticized by Justice LEVIN in his dissent in *People v McColor,* 36 Mich App 455, 458–465; 194 NW2d 99–103 (1971). We can add nothing to his analysis and criticism except our endorsement and the observation that *Calhoun* conflicts with and must be regarded as overruled by *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971).

We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. "Nonutterances" are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did.

In *Graham, supra,* which was decided following the decision in *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), we permitted the prosecution to cross-examine the defendant with respect to his silence at the time of arrest because the defendant testified on direct examination that he had repeatedly told the police at the time of arrest and while incarcerated that he wanted to explain the whole situation involved in his arrest.

In *Graham, supra,* 458, we stated:

"In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial."

In the present case on direct examination defendant gave no testimony whatsoever regarding any statement made to the police or anyone else.

On appeal the parties properly drew no distinction from the circumstance that the "non-statement" was made to the questioning officer rather

than the arresting officer. The prosecutor's counterstatement of questions involved is:

"Whether the Court of Appeals erred in upholding the trial court's admission of evidence of *arrest silence* for impeachment?" (Emphasis supplied.)

Here the defendant might well have considered himself to be under arrest.

Officer Berryman testified that while off duty after completing his shift, he was driving near the scene of the crime here involved. He observed a holdup in progress from which some suspects fled. Because he was but a block away he circled around and saw two men running through an alley. One of the men was defendant Ned Ladd Bobo. Believing them to be the suspects he had seen fleeing the holdup he stopped them at gun point and identified himself as a police officer. He asked them for identification and while he was checking their identification, Officer Selick came running up and two other officers came up in a car and Officer Selick placed the two men under arrest.

What concerned the parties and what prompted our grant of leave was the propriety of using the fact of defendant's silence either as evidence of guilt or for the purpose of impeachment.

Whether his silence was prior to or at the time of arrest makes little difference—the defendant's Fifth Amendment right to remain silent is constant.

In Michigan we have been committed to the doctrine since long before *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966) that even in the face of specific accusation of a crime that an accused's silence may not

be used against him. In *People v Bigge,* 288 Mich
417; 285 NW 5 (1939), this Court said:

"The time has not yet come when an accused must
cock his ear to hear every damaging allegation against
him and, if not denied by him, have the statement and
his silence accepted as evidence of guilt. There can be
no such thing as confession of guilt by silence in or out
of court. The unanswered allegation by another of the
guilt of a defendant is no confession of guilt on the part
of a defendant. Defendant, if he heard the statement,
was not morally or legally called upon to make denial
or suffer his failure to do so to stand as evidence of his
guilt."

If silence in the face of specific accusation may
not be used, it would be a strange doctrine indeed
that would permit silence absent such an accusa-
tion to be used as evidence of guilt.

It is unimportant whether the accuser be a
police officer or not. Manifestly whenever a person
is stopped for interrogation by the police, whether
technically under arrest or not, the Fifth Amend-
ment guarantees that his silence may not be used
against him.

The prosecutor's reliance on *Noble, supra,* as
authority for admitting evidence of defendant's
silence as part of the res gestae seems misplaced.
*Noble* held that a complainant's report of an as-
sault after 12 hours could be considered as part of
the res gestae of that crime, but it did not speak at
all to the question of a defendant's silence.

In *People v Todaro,* 253 Mich 367; 235 NW 185
(1931) and on rehearing 256 Mich 427; 240 NW 90
(1932) a majority of the Court held that silence in
the face of accusation by an unidentified accuser
might be shown as part of the res gestae and such
silence be regarded as acquiescence in the truth of
the charge. We are persuaded that the reasoning

of the dissenters in that case is more persuasive and in light of our conviction that such a doctrine is wholly at odds with the law defining our rights under the Fifth Amendment, overrule *Todaro.*

Borrowing from Justice Higbee in *State v Hogan,* 252 SW 387 (Mo, 1923), we quote his observation:

"This humane rule has higher sanction than mere judicial precedent. At the trial of Jesus before the Sanhedrin, we read:

" '59. Now the chief priests and elders, and all the council, sought false witness against Jesus, to put him to death;

" '60. But found none; yea, though many false witnesses came, yet found they none. At the last came two false witnesses.

" '61. And said, This fellow said I am able to destroy the temple of God, and to build it in three days.

" '62. And the high priest arose, and said unto him, Answerest thou nothing? What is it which these witness against thee?

" '63. But Jesus held his peace.' "

—Matthew 26:59–63.

"When he was before Pilate:

" '11. And Jesus stood before the governor: and the governor asked him, saying, Art thou the King of the Jews? And Jesus said unto him, Thou sayest.

" '12. And when he was accused of the chief priests and elders, he answered nothing.

" '13. Then said Pilate unto him, Hearest thou not how many things they witness against thee?

" '14. And he answered them never a word; insomuch that the governor marveled greatly.' "

—Matthew 27:11–14

Reversed and remanded for new trial.

T. M. KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred with T. G. KAVANAGH, J.

T. E. BRENNAN, J. *(dissenting)*. I must dissent.

The difficulty with the majority decision is that it does not fit the facts of the case before us.

For emphasis, I have underlined quoted portions of the majority opinion in the following quotations:

"The question before us as posed by defendant is as follows:

" 'Where an accused exercises his constitutional right to remain silent *at the time of arrest,* does the use of such silence against him at trial under the doctrine of impeachment by prior inconsistent statement constitute prejudicial error where he made no allegations on direct examination as to what was said or not said *at the time of arrest ?'*

* * *

"The prosecutor urges that we allow the prosecution to impeach a defendant by questioning him about what was said or not said to the police *at the time of arrest* as part of the *res gestae* citing *People v Noble,* 23 Mich App 100, 101; 178 NW2d 118, 119 (1970), or as an inconsistent 'nonutterance', citing *People v Calhoun,* 33 Mich App 141, 147; 189 NW2d 743, 746 (1971).

* * *

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent *in the face of accusation.* 'Nonutterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did."

These excerpts from the majority opinion demonstrate that the majority are of the mistaken view that the defendant in this case was under arrest and accused of burglary at the time of the alleged "nonutterance". In fact, the defendant was not under arrest at that time, nor had he been accused of anything.

The following is an excerpt from the testimony
of the defendant upon direct examination:

"*Q.* What did you see with reference to anybody
running down the street toward you?

"*A.* I didn't see nothing but two men running past
me.

"*Q.* Did they—had you reached the alley in the
middle of the street when these men ran past you?

"*A.* I believe I was past. As a matter of fact, I was.

"*Q.* And how long was it after these men ran past
you that you were stopped by the policemen?

"*A.* It wasn't too long, a matter of moments, I believe.

"*Q.* When you were stopped by the policemen, did you
show them identification?

"*A.* Yes, I did.

"*Q.* And then what happened?

"*A.* Well, after I got through identifying myself, he
told me and Milton Edison what had happened and
then—

"*Q.* What did he say, what were the words that he
used?

"*A.* He said a man had been robbed. I had told him
where I was and where I was going. And he let us go.

"*Q.* Then what happened, if anything?

"*A.* Well, me and Milton Edison, we made our first
steps and then another squad police car came and
stopped us.

"*Q.* And did those police officers say anything to you?

"*A.* Those were officers who put us under arrest."

This testimony clearly shows, by defendant's
own words, that the first officer who stopped him
on the evening in question did not place him
under arrest, nor did he accuse the defendant of
burglary. This comports with the testimony of
officer Berryman. He was not investigating a bur-
glary. He had observed a holdup in progress a few
moments before his encounter with the defendant.

He was investigating a robbery. He told the defendant that a man had been robbed.

The cross-examination of the defendant upon the question of whether or not he informed Berryman of the "two men running", concludes as follows:

"*Q. (By Mr. Stephens)* You did indicate you did not tell the officer about these two men running, allegedly running down the street?

"*A.* What did I do?

"*Q.* You did not tell the officer who stopped you about these men running down the street?

"*A.* I don't remember.

"*Q.* Did you tell the officer they went down that alley?

"*A.* I don't recall.

"*Q.* Did you point down the alley?

"*A.* I don't recall.

"*Q.* Did you describe these men to the officers?

"*A.* I don't recall.

"*Q.* Did you get in the officer's car and go down the alley with him?

"*A.* No, I didn't.

"*Q.* Your testimony is that you took another step, you talked to the officer, and somebody else came up and arrested you; is that correct?

"*A.* I said I took more than a couple of steps. I said he let us go."

Again it is clear that the defendant was not under arrest at the time of his conversation with officer Berryman.

I cannot conceive that our Court really intends to extend the rule of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), to all cases where citizens engage in conversations of any kind with law enforcement personnel.

If every conversation between a policeman and a

citizen on the street must begin with a recitation of the *Miranda* warnings then we may as well consign the whole matter of public safety to Divine Providence.

Certainly there could no longer be any meaningful police-community relations, nor any effective citizen assistance to officers of the law.

SWAINSON and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.