PEOPLE v PARKS

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—EVIDENCE—THEORY OF
   COUNSEL.

   Instructions based upon a theory which is unsupported by the
   evidence may not be given.

2. CRIMINAL LAW—EVIDENCE—AIDING AND ABETTING—GUILT OF PRIN-
   CIPAL—CONCERT OF ACTION—INSTRUCTIONS TO JURY.

   The guilt of another person as principal and a concert of action
   between the defendant and the principal must be shown to
   sustain a charge of aiding and abetting against a defendant.

3. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—PROOF OF
   GUILT.

   The facts to prove guilt by circumstantial evidence must not only
   point to a defendant's guilt but must be inconsistent with any
   other reasonable hypothesis upon which the defendant's inno-
   cence may be maintained.

4. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—GUILT OF
   PRINCIPAL—INSTRUCTIONS TO JURY—AIDING AND ABETTING.

   Fingerprints found on objects at the burglarized premises which
   were not the defendant's and the presence of an unknown
   person with the defendant when he cashed a check taken from
   the burglarized premises did not show the existence of a
   principal in the crime other than the defendant where there
   were many hypotheses to explain these pieces of circumstantial

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 75 Am Jur 2d, Trial §§ 651, 652.
[2] 21 Am Jur 2d, Criminal Law § 115 *et seq.*
[3, 4, 10] 29 Am Jur 2d, Evidence § 266.
   30 Am Jur 2d, Evidence §§ 1091, 1125, 1126.
[5] 4 Am Jur 2d, Appeal and Error § 159 *et seq.*
   5 Am Jur 2d, Appeal and Error § 889.
[6, 8, 10, 12] 29 Am Jur 2d, Evidence §§ 278, 614, 640, 644.
[7, 9] 4 Am Jur 2d, Appeal and Error § 159 *et seq.*
[11] 58 Am Jur, Witnesses § 841.
[13] 29 Am Jur 2d, Evidence §§ 380, 384.
   Admissibility of telephone conversation in evidence. 105 ALR 326.

evidence which would be inconsistent with the theory of the existence of a principal other than the defendant; therefore, instructions on aiding and abetting which assumed the existence of an unknown principal were not proper.

5. Criminal Law—Appeal and Error—Basis for Conviction.

The Court of Appeals must reverse a criminal conviction where it is unable to say upon which of two theories a defendant stands convicted, and conviction upon one of the theories would have been impermissible.

6. Criminal Law—Evidence—Constitutional Law—Right to Remain Silent—Witnesses—Defendant as Witness—Impeaching Defendant—Harmless Error.

Admission of testimony that a defendant exercised his privilege of silence at the time of his arrest is reversible error unless such testimony was elicited to impeach the defendant's inconsistent statements at trial or can be said to have been harmless error beyond a reasonable doubt.

7. Criminal Law—Appeal and Error—Test for Reversible Error —Harmless Error.

The two questions pertinent to the inquiry of whether error is reversible are first, is the error so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless and second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?

8. Criminal Law—Evidence—Constitutional Law—Right to Remain Silent—Judicial Process.

A prosecutor's conduct in deliberately eliciting the fact that the defendant chose to exercise his right to remain silent is offensive to the maintenance of a sound judicial process and constitutes reversible error.

9. Criminal Law—Harmless Error—Jury—Reasonable Doubt.

Error which might have aided in convincing an otherwise undecided juror of a defendant's guilt cannot be harmless error beyond a reasonable doubt; error is harmless where the proof is so overwhelming aside from the taint of error that all reasonable jurors would find guilt beyond a reasonable doubt.

10. Criminal Law—Appeal and Error—Constitutional Law— Right to Remain Silent—Evidence—Harmless Error—Explanatory Statements.

Error in the admission of testimony that a defendant exercised his privilege of silence at the time of his arrest was not

harmless beyond a reasonable doubt where the evidence against the defendant was weak and the introduction into evidence of the defendant's subsequent explanatory statement did not dissipate, but rather increased the prejudice created in the minds of the jurors as a result of the testimony concerning his initial silence.

11. WITNESSES—CRIMINAL LAW—EVIDENCE—OPINIONS ON GUILT.

A witness may not express an opinion concerning the guilt or innocence of a defendant.

12. CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT—CRIMINAL LAW —ADOPTIVE ADMISSION RULE—TACIT ADMISSION RULE.

Application of the adoptive or tacit admission rule in the field of criminal law is violative of the proscription in the United States Constitution (US Const, Am V).

13. CRIMINAL LAW—EVIDENCE—CONVERSATIONS—HEARSAY—RES GESTAE.

A telephone conversation between the defendant and a witness which took place two to three months after the alleged criminal act cannot be considered part of the res gestae of the crime; testimony of this conversation is not admissible against the defendant.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 November 7, 1974, at Lansing. (Docket No. 18127.) Decided January 27, 1975.

Norman R. Parks was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Sandra M. Kabboush,* Assistant Prosecuting Attorney, for the people.

*Joel Schavrien,* for defendant on appeal.

Before: QUINN, P. J., and McGREGOR and O'HARA,* JJ.

McGREGOR, J. Defendant was found guilty by a jury, on April 24, 1973, of breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305, and was sentenced to 6-1/2 to 10 years in prison. He appeals as of right.

On Monday, July 31, 1972, a maintenance employee of Northland Moving and Storage Company returned to work at 5 a.m. and discovered that Northland had been burglarized some time between 1 p.m. on Saturday, July 29, and his arrival at work. The employee summoned the police and David Leonard, the company president. When the Troy police arrived, they observed that entry had apparently been gained by driving a fork-lift truck through the warehouse door. The door window was broken and the interior ransacked. Inside the premises, tools and liquor bottles were found in the "drivers' waiting room". The tools belonged to the maintenance employee and were on his workbench at the rear of the premises at quitting time the previous Friday.

Approximately one hour later, another call was received by the Troy police from Northland. The caller told the police that a man had been found sleeping in one of the vans located in the parking lot adjoining Northland Moving and Storage. This individual found sleeping in the van by the police was the defendant, an employee of Northland for about four years. The police noted some intoxication about the defendant and escorted him inside the building.

Once inside the premises, defendant was given the *Miranda* warnings and confronted with a hack-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

saw which had been found in the drivers' waiting room. A conversation then occurred between the defendant and the police officers as to whether the defendant had handled the hacksaw; at that time the defendant denied handling the saw.

The police lifted a total of 18 fingerprints from the tools, the liquor bottles, and a clipboard which were found in the drivers' waiting room; the only two fingerprints which were ever identified were removed from the hacksaw. At trial, expert testimony revealed that these two fingerprints were those of the defendant. Defense counsel objected to the admission of these fingerprints. The record reflects that the hacksaw was accessible to the defendant during the course of his employment and between the time of the discovery of the tools and the lifting of the fingerprints by the police.

Four undistributed checks, which were in the operation manager's desk as of 1 p.m. on Saturday, were missing after the burglary; one of these checks was a payroll check made out to an employee named Richard Butterfield. Several days after the breaking and entering, the defendant, in the company of an unknown male, appeared at the Troy Bar and presented a check to be cashed. Mrs. Irene Kucab, the bar owner, testified that she knew the defendant, and that the check which he presented was endorsed in the name of the payee, Richard Butterfield. At trial, Richard Butterfield testified that he did not pick up his check on Friday, July 28th; further, that he did not sign the check, did not give permission to anyone to pick it up, nor did he accompany the defendant to the bar when the check was allegedly cashed.

Defendant raises six issues for our consideration. Those meriting discussion are as follows:

I. *Did the trial court err by giving an instruction*

*over defense counsel's objection, on aiding and
abetting?*

The prosecution based its theory on aiding and
abetting on the following facts: (1) numerous un-
known fingerprints were found on objects in the
burglarized area; (2) defendant's fingerprints
matched two of the prints found on a hacksaw in
the burglarized premises; (3) defendant was accom-
panied by an unknown individual when he cashed
a payroll check allegedly taken from the burglar-
ized premises.

Defendant contends that the evidence presented
was insufficient to support a theory of aiding and
abetting. We agree. It is reversible error to give an
instruction on aiding and abetting when there is
no evidence to support that charge. In order to
warrant such an instruction, there must exist
some evidence of a "concert of action" between the
defendant and the principal in the commission of a
crime. *People v Marshall,* 53 Mich App 181; 218
NW2d 847 (1974).

The *sine qua non* of aiding and abetting is that
more than one person must be criminally involved
either before, during, or after the commission of a
crime. A defendant cannot aid and abet himself in
the commission of his crime. In order to sustain a
charge of aiding and abetting against an accessory,
the guilt of another person as principal must be
shown. *People v DeBolt,* 269 Mich 39; 256 NW 615
(1934); *People v Williams #1,* 45 Mich App 623;
207 NW2d 176 (1973).

The prosecutor points to the unidentified finger-
prints on the objects found at the scene of the
crime as evidence of the existence of other parties
in the commission of the crime. The record shows
that employees of Northland had, on occasion,
indulged in alcoholic beverages at the company

premise in the drivers' room and in the dispatcher's office. Although the defendant and other employees of Northland did not have permission to use the tools which belonged to the maintenance employee, such tools were accessible to other employees and could easily have been touched and used prior to the breakin. Since the prosecution did not establish that the fingerprints could only have been impressed at the time when the crime was committed, a conviction of an unknown principal could not be based upon this fingerprint evidence, standing alone. *People v Cullens,* 55 Mich App 272; 222 NW2d 315 (1974).

The prosecution also alleges that the fact the defendant was accompanied by another person when he cashed the check stolen from Northland justifies the charge of aiding and abetting. We disagree. One can easily conceive a number of reasons why defendant was seen in a bar with another individual.

The prosecution was required to prove the existence and guilt of a principal other than the defendant in order to establish the propriety of the charge on aiding and abetting. The prosecutor's case on this theory was based entirely on circumstantial evidence. In order to prove guilt by circumstantial evidence, the facts proven must not only point to a defendant's guilt but must be inconsistent with any other reasonable hypothesis upon which the defendant's innocence may be maintained. 2 Gillespie, Michigan Criminal Law & Procedure, (2d ed), § 906, pp 1216, 1217.

The fingerprints found on the bottles and tools in the drivers' waiting room and the presence of an unknown person at a bar where the defendant cashed the stolen check do not point to the guilt of anyone other than the defendant. There are many

hypotheses which would explain these pieces of circumstantial evidence which would be inconsistent with the prosecutor's theory of the existence of a principal other than the defendant in the commission of this crime. It is the opinion of this Court that the prosecution not only failed to prove the guilt of this unknown principal, but also the very existence of a principal other than this defendant.

It is reversible error for the court to give instructions upon a theory for the prosecution which is unsupported by the evidence. There was no substantive proof to justify the trial court's instruction on the theory of aiding and abetting. *People v Ware,* 12 Mich App 512; 163 NW2d 250 (1968).

The defendant stands convicted on one of two theories, one of which is permissible and one of which is not. The inability to say for sure upon which theory the conviction rests demands reversal. *People v Gilbert,* 55 Mich App 168; 222 NW2d 305 (1974).

II. *Is it reversible error for the prosecutor to elicit testimony which indicates that defendant had exercised his right to remain silent?*

During his examination of Officer Martel, the prosecutor elicited the following testimony:

"*Q.* Did you at about that time have a further conference with Mr. Parks?

"*A.* Yes, I did.

"*Q.* Where did that take place?

"*A.* It took place at the Oakland County Jail.

"*Q.* And do you know if that was following * * * your receipt of a report from him?

"*A.* This was after the warrant had been issued.

"*Q.* I see, and did you give Mr. Parks some information in that interview?

"*A.* Yes, I did.

"*Q.* What did you tell him?

"*A.* I advised him that his fingerprint had been found on the hacksaw that was taken from Northland Moving and asked him again after having advised him of his rights.

"*Q.* In other words, you repeated the *Miranda* warning?

"*A.* Yes, sir.

"*Q.* Did he, following that, wish to make a statement?

"*A.* He refused at that time to answer any questions."

The admission of testimony that a defendant exercised his privilege of silence at the time of his arrest is reversible error, unless such testimony was elicited to impeach the defendant's inconsistent statements at trial or unless the error can be said to have been harmless beyond a reasonable doubt. *People v Kremko,* 52 Mich App 565; 218 NW2d 112 (1974); *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

It cannot be claimed that this testimony was given to impeach a prior inconsistent statement of the defendant, since the defendant did not testify in his own behalf. The prosecution does claim, however, that the error here complained of was harmless beyond a reasonable doubt. The prosecution bases its argument on the fact that Officer Martel testified that the defendant then made an exculpatory statement concerning the existence of his fingerprints on the hacksaw. Officer Martel testified that after the defendant stated his desire to remain silent, he was confronted with the evidence that the police had identified fingerprints on the hacksaw as belonging to the defendant. When confronted with this evidence, the defendant stated that he had used the saw some weeks ago.

In determining whether the error is harmless or reversible, we employ the two-step process enumerated in *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327 (1973). The two questions pertinent to our inquiry are as follows:

"First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * *

"Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?"

In answer to the first inquiry, we find that the prosecutor deliberately elicited the fact that the defendant chose to exercise his right to remain silent. We again find such conduct offensive to the maintenance of a sound judicial process. *People v Dunn,* 46 Mich App 226; 208 NW2d 239 (1973).

Even if this error was not deliberately interjected into the proceedings by the prosecutor, our evaluation of the second criteria would likewise require reversal. In order to hold that the error in this case was harmless beyond a reasonable doubt, we must determine whether the error might have aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt. As stated in *People v Swan,* 56 Mich App 22, 33; 223 NW2d 346 (1974):

"If it is reasonably possible that, in a trial free of the error complained of, even one such jury member might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried. If, on the other hand, 'the proof was so overwhelming, aside from the taint of the error, that all reasonable jurors would find guilt beyond a reasonable doubt,' then the conviction must stand."

In *Swan,* the Court found that the testimony relating to the defendant's initial exercise of his

right to remain silent was harmless beyond a reasonable doubt. The Court emphasized that its decision was based on two factors: First, the evidence against the defendant, considered aside from testimony concerning the defendant's silence, was overwhelming and provided ample evidence to destroy any reasonable doubt of the defendant's guilt in the minds of the jury members. Second, the defendant's subsequent cooperation with the police and his subsequent self-incriminating statements to the police dissipated the harm resulting from the testimony concerning the defendant's initial silence.

Chief Judge LESINSKI, writing for the Court in *Swan,* stated that the usual harm involved in testimony about a defendant's silence at arrest is that the jury may hold his failure to cooperate with authorities against him, or may infer that the defendant was acting to hide his guilt. While later self-incriminating statements may dissipate such harm, the Court stated that the results may not be the same where a defendant makes subsequent exculpatory or explanatory statements. The Court stated that in such cases a subsequent statement by the defendant may increase, and not dissipate, the prejudice suffered from this type of error.

The Court concluded by emphasizing that it would find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principles of law which forbid comment upon an accused's silence, or that clear violations of the principle arise from inadvertence. While the defendant's conviction in *Swan* was affirmed because of the overwhelming evidence aside from this error, the Court stated that deliberate violations of this rule may lead to reversals even where evidence might be overwhelming.

In the case at bar, the evidence against the defendant was weak at best. Further, the introduction into evidence of the defendant's subsequent explanatory statement relating to his handling of the hacksaw did not dissipate, but rather increased the prejudice created in the minds of the jury members as a result of the testimony concerning his initial silence. We find that this error was not harmless beyond a reasonable doubt and, therefore, constitutes reversible error.

III. *Is testimony of an adoptive admission made two to three months after the commission of the crime admissible into evidence?*

The trial court, over defense counsel's objection, allowed the president of the Northland Moving & Storage Company, Mr. Leonard, to testify as follows:

"*Q.* * * * [A]ll right, and I think you answered also that he [defendant] called you at a later date and you talked to him?

"*A.* Right.

"*Q.* Would you tell us about that, please?

"*Mr. Oliphant:* I object, your Honor, at this point. I think that, number one, it is hearsay, and number two, if we're getting into any statements made by Mr. Parks there is going to be a question of whether or not they're voluntary. I think I have a right to go into it without the jury. The Court can take notice I have not questioned this gentleman before so I don't know what he's going to testify to. I did not have an opportunity to cross-examine him at the preliminary examination.

"*The Court:* You didn't question what gentleman before?

"*Mr. Oliphant:* The witness, your Honor.

"*The Court:* You just finished.

"*Mr. Oliphant:* Well, before that.

"*Mr. Wilkinson:* He's been endorsed nine months, your Honor.

"*The Court:* Objection is overruled. You may have an answer.

"*Q. (By Mr. Wilkinson):* You said Mr. Parks called you at a later date after the day of the discovery. Was that on the phone?

"*A.* Yes, but this was long after, I mean he was in jail and out.

"*Q.* I see, and approximately how long was it after the discovery of the B and E, I realize you may not know precisely, but approximately?

"*A.* Two and a half to three months, I think.

"*Q.* All right, and did he call you at work?

"*A.* Yes, he did.

"*Q.* And will you tell us, please, what he said?

"*A.* No more than to, I think, ask for his job back and explain the difficulties he was in and that was basically all of it.

"*Q.* Was there in that conversation either on your part or his any discussion of the alleged break in?

"*A.* Right, and I thought it was where he wanted his job back and I just simply stated with my opinion that—

"*Mr. Oliphant (Interposing):* Well, your Honor, at this point I'll object to what his opinion was.

"*Mr. Wilkinson:* He's stating what he said, your Honor please.

"*The Court:* You may have an answer.

"*The Witness:* I said it was my opinion he did it, and that his job—he could not have his job back.

"*Q. (By Mr. Wilkinson):* Did he respond in any way to your statement?

"*A.* I don't think so."

The prosecution does not dispute the settled and long-established rule that a witness cannot express an opinion concerning the guilt or innocence of a defendant. 23 CJS, Criminal Law, § 858(5), pp 387, 388. However, the prosecution alleges that this testimony was admissible as an adoptive admission by the defendant, and cites *People v Kelley,* 32

Mich App 126; 188 NW2d 654 (1971), as controlling authority for this position.

In *Kelley, supra,* the court allowed a witness to the crime of arson to testify that he stopped at the scene of the fire, saw the defendant and Ronald Robinson jump into a car, and heard Robinson say to Kelley, "you threw the match too quick". Kelley made no reply to Robinson's accusation.

On appeal, the trial court's admission of this testimony was upheld, based on the following rationale:

"In *People v Gisondi,* 9 Mich App 289, 293–294; 156 NW2d 601 (1967), this Court noted:

" 'Nevertheless, under long standing Michigan precedents, which antedate *Escobedo* and *Miranda,* the accused's silence in face of an accusation is not deemed an admission or confession in a criminal case *(People v Bigge,* 288 Mich 417; 285 NW 5 [1939]) *except when such silence occurs on the part of a suspected participant in a crime as a part of the res gestae (People v Todaro,* 253 Mich 367; 235 NW 185 [1931]).' (Emphasis supplied [in *Kelley, supra].)*

"Unfortunately for defendant Kelley, his silence was that of a suspected participant in a crime as part of the *res gestae.* The statement was made during the course of the criminal episode; it recounted a detail of the crime. Under these circumstances, Kelley's on-the-scene silence evidenced an adoption by him of Robinson's accusation. Accordingly, there was no error in the use of Robinson's statement. It constituted Kelley's adoptive admission. *People v Todaro [supra];* see also 4 Wigmore, Evidence (3d ed), § 1071, p 70; Annotation, 'Admissibility of inculpatory statements made in the presence of accused, and not denied or contradicted by him,' 80 ALR 1235, supplemented in 115 ALR 1510.

"At trial, Judge Schemanske correctly noted the rationale for introduction of Robinson's statement as Kelley's adoptive admission:

" 'Certainly, a guiltless person would have protested

such an accusation made in the presence of three other people.' " pp 136–137.

The prosecution's reliance on *Kelley* is inappropriate. The application of the adoptive or tacit admission rule in the field of criminal law has been repudiated as violative of the proscription included in the Fifth Amendment of the United States Constitution against self-incrimination. *Commonwealth v Dravecz,* 424 Pa 582, 585–586; 227 A2d 904 (1967); *State v Kelsey,* 201 NW2d 921, 926 (Iowa, 1972).

In holding that the use of tacit admissions was no longer permissible in criminal trials, the Court in *Kelsey* quoted *Dravecz* and stated

"This rule, which has become known as the tacit admission rule, is too broad, wide-sweeping, and elusive for precise interpretation, particularly where a man's liberty and his good name are at stake. Who determines whether a statement is one which 'naturally' calls for a denial? What is natural for one person may not be natural for another. There are persons possessed of such dignity and pride that they would treat with silent contempt a dishonest accusation. Are they to be punished for refusing to dignify with a denial what they regard as wholly false and reprehensible?

\* \* \*

"How so incongruous a doctrine ever gained solemn authoritativeness might well be a subject for a long article in a law review. Especially when one reflects on the fact that the rule is founded on a wholly false premise. One can understand how a principle of law built on solid rock might incline to slant from the perpendicular because of over-heavy superstructure piled on it as it rises higher and higher into the realm of hypothesis, but the tacit admission rule has no solid foundation whatsoever. It rests on the spongy maxim, so many times proved unrealistic, that silence gives consent. Maxims, proverbs and axioms, despite the attractive verbal packages in which they are presented

to the public, do not necessarily represent universal truth."

The Court in *Kelley,* while recognizing the general rule in Michigan that adoptive admissions are not admissible in a criminal case, relied on *People v Todaro,* 253 Mich 367; 235 NW 185 (1931), and, *on rehearing,* 256 Mich 427; 240 NW 90 (1932), as establishing an exception to the rule when such silence occurs on the part of a suspected participant in a crime as part of the res gestae. However, the Supreme Court, in *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), specifically overruled *Todaro,* stating that the doctrine was wholly at odds with the Fifth Amendment. While *Kelley* was not overruled specifically in *Bobo,* its value as precedent is questionable.

Even if *Kelley* has not been overruled *sub silentio, Kelley* is inapplicable in this case. The telephone conversation between the defendant and Mr. Leonard, the company president, which took place two to three months after the burglary, cannot be considered by any stretch of the imagination as part of the res gestae of the crime. The trial judge, therefore, erroneously admitted the statement into evidence.

We have examined the remaining allegations of error and find them without merit.

Reversed and remanded for a new trial.

All concurred.