PEOPLE v McGILLEN #2

Opinion of the Court

1. Criminal Law—New Trial—Statements—Evidence.

A new trial is mandated where statements given by the defendant to the arresting officer at the time of his arrest, and introduced against him at trial, were obtained in violation of *Miranda v Arizona*, 384 US 436 (1966) and were involuntarily given within the confines of *People v Walker* (on rehearing), 374 Mich 331 (1965); issue of sufficiency of the evidence to convict need not be decided by the Michigan Supreme Court as these alleged errors may be eliminated upon retrial.

2. Rape—Penetration—Physicians and Surgeons—Witnesses.

The examining physician in a rape case is a proper witness as long as his testimony may assist the jury in their determination of the existence of either of two crucial elements of the offense charged, (1) penetration itself and (2) penetration against the will of the victim.

3. Rape—Statutory Rape—Presumptions—Expert Witnesses—Physicians and Surgeons.

The prosecution need not prove that the act took place against the will of the victim where the crime charged was statutory rape as the law presumes that fact if the victim is below the statutory age of consent; an expert opinion of the examining physician on this element is then generally beyond the scope of admissible expert testimony.

4. Rape—Penetration—Objection—Physicians and Surgeons.

Defendant's objection to a doctor's testimony as to the essential

References for Points in Headnotes
[1, 8, 9] 29 Am Jur 2d, Evidence §§ 523–596.
[2, 4, 10, 11] 65 Am Jur 2d, Rape § 3.
[3] 21 Am Jur 2d, Criminal Law § 93.
[5, 7, 12, 13] 31 Am Jur 2d, Expert and Opinion Evidence §§ 42–44.
   65 Am Jur 2d, Rape § 68.
[6] 65 Am Jur 2d, Rape § 91.

element, penetration, in a rape case, that since the prosecutrix admitted that a second rape occurred subsequent to the charged rape any testimony the doctor may give is irrelevant and immaterial especially in view of the length of time that intervened between the alleged act and the physical examination, should have been sustained, his testimony should, under the facts of the case, be limited to the question of whether or not the complaining witness still had an intact hymen at the time of the examination.

5. RAPE—PHYSICIANS AND SURGEONS—EXPERT WITNESSES.

A doctor is not permitted to lend his expert testimony as to the crucial issue of whether or not the prosecutrix was actually *raped* at a specific time and place.

6. RAPE—LACK OF CONSENT—PHYSICIANS AND SURGEONS.

Rape is a crime, defined by law, with specific elements comprising the offense and the most crucial of them is lack of consent of the victim; to this element a doctor could not testify.

7. RAPE—PHYSICIANS AND SURGEONS—EXPERT WITNESSES.

A doctor is not a qualified expert on the question of whether or not the prosecutrix was *raped by the defendant* on the alleged date.

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

8. RAPE—STATEMENTS—VOLUNTARINESS—MIRANDA WARNINGS.

*Trial judge properly ruled voluntary the remarks of a defendant who was charged with the forcible rape of his daughter and stated to an officer that he was "only trying to help her so she will be ready when she begins dating boys", where the officer read the* Miranda *warning to defendant, asked "do you wish to talk to us now" and, at that time, the defendant indicated that he would talk although defendant at a second hearing testifed that he did not understand the* Miranda *warnings because, after defendant's alleged statement he said he wanted an attorney thereby invoking his rights.*

9. CRIMINAL LAW—MIRANDA RIGHTS—HARMLESS ERROR—PREJUDICE.

*An officer's conversation with defendant after defendant invoked his* Miranda *rights was harmless error where nothing was elicited and there was no gain to the prosecution or prejudice to the defendant.*

10. RAPE—PROOFS—PENETRATION—STATUTES.

*Under the rape statute the prosecutor's proof must show penetration (MCLA 750.520).*

11. RAPE—EVIDENCE—PENETRATION—STATUTES.

*The crime of rape is not proved or disproved by evidence of whether or not the complaining witness still had an intact hymen at the time of examination by a doctor; the standard is penetration, however slight, and it is penetration not defloration that the statute requires (MCLA 750.520).*

12. RAPE—PHYSICIANS AND SURGEONS—EXPERT TESTIMONY—RELEVANCY.

*Expert testimony of a physician on the issue of whether a prosecutrix was actually raped at a specific time and place could and in many cases would be relevant.*

13. RAPE—WITNESSES—PHYSICIANS AND SURGEONS—OPINION TESTIMONY—JURY—WEIGHT OF TESTIMONY—VERDICT.

*Conviction of rape should not be reversed where all that a doctor said was that his findings were consistent with the history given him by the complaining witness and offered no opinion as to the truth of her story; the jury remained the final arbiters of the weight to be given the complaining witness' testimony and, by their verdict, they indicated acceptance of her version.*

Appeal from Court of Appeals, Division 3, R. B. Burns, P. J., and Holbrook and O'Hara, JJ., affirming Bay, Leon R. Dardas, J. Submitted March 13, 1974. (No. 1 March Term 1974, Docket No. 54,320.) Decided August 2, 1974. Rehearing denied September 12, 1974.

William P. McGillen was convicted of rape. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene Penzien,* Prosecuting Attorney, and *Prosecuting Attorneys Appellate Service* (by *Howard C. Marderosian),* for the people.

*Jerome F. O'Rourke (Carl H. Leiter,* of counsel), for defendant on appeal.

T. M. KAVANAGH, C. J. Defendant was arrested on June 6, 1970 and subsequently charged with the rape of his daughter, Barbara McGillen, on two separate occasions. He was separately tried and convicted of both offenses and appealed his successive convictions. The Court of Appeals consolidated both cases for hearing on the merits and subsequently affirmed both convictions in an unpublished opinion, Docket Nos 11802, 13077, July 27, 1972. This Court granted leave to appeal in both cases, 388 Mich 801 (1972).

For decisional purposes, this Court again severed these two cases. In *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), also released this date, this Court ruled that the statements given by the defendant to the arresting officer at the time of his arrest, and introduced against him at trial, were obtained in violation of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966) and were involuntarily given within the confines of *People v Walker,* (on rehearing), 374 Mich 331; 132 NW2d 87 (1965). Since the same statements were also introduced against the defendant at trial in this case, involving the crime allegedly committed by him on May 23, 1970, and were the result of the same questioning procedure held illegal by this Court in *McGillen #1, supra,* a new trial is also mandated in this case.

Defendant raises several other issues, not the least of which concerns the sufficiency of the evidence to convict in this case, which need not now be decided by this Court as these alleged errors may be eliminated upon retrial of this matter.

However, in the interest of justice, we feel compelled to caution the prosecution on a point which

we feel may be repeated on retrial and which this Court views as reversible error.

A time table is helpful to fully appreciate the peculiar facts in this case.

May 23, 1970 rape occurs.

May 31, 1970 rape occurs.

June 8, 1970—prosecutrix is examined by Dr. Racine in connection with the May 31, 1970 rape.

February 26, 1971—Defendant is convicted of the May 31, 1970 offense.

July 13, 1970—Dr. Racine testifies at trial on the May 23, 1970 offense.

As noted above, Dr. Racine examined the prosecutrix over two weeks after the alleged incident occurred. Within this two week interval the prosecutrix was, by her testimony, again raped. The defendant at trial objected that any testimony by this doctor in this trial would be irrelevant, immaterial and inadmissible.

At trial, the doctor testified as follows:

Cross-Examination:

"*Q.* How about blood?

"*A.* There was no blood.

"*Q.* Wouldn't a finding of blood be consistent with intercourse?

"*A.* Not in a marital vagina.

"*Q.* How about bruises?

"*A.* There were no bruises.

"*Q.* Black and blue marks?

"*A.* No, sir.

"*Q.* Doctor, this either would not be consistent with intercourse or an accident I suppose too?

"*A.* Again sir, not in a marital vagina.

"*Q.* Not in a marital vagina?

"*A.* No, sir.

"BY MR. FROST *[chief assistant prosecuting attorney]*
—REDIRECT EXAMINATION:

"*Q.* Doctor, is the finding of a broken or ruptured hymen the only thing you based your findings on of a marital vagina?

"*A.* No, sir.

"*Q.* Did you take a history from Barbara?

"*A.* Yes, sir.

"*Q.* Were your findings consistent or inconsistent with the history given you?

"*A.* They were consistent. As I stated before, in practicing medicine you depend upon the physical, laboratory and history as the most important part to the physician in the examination and I found nothing that would contradict the history that was given.

"*Mr. Frost:* No further questions.

"*The Court:* Further recross?

"BY MR. ORFORD *[attorney for defendant]*—RECROSS EXAMINATION:

"*Q.* By history, you are taking what Barbara told you as a fact?

"*A.* Yes, sir.

"*Q.* What you are saying is what you found is consistent with what she told you?

"*A.* Yes, sir.

"*Q.* That doesn't make it inconsistent to some other explanation, does it?

"*A.* No, sir."

In *People v Kirtdoll,* 391 Mich 370, 394–395; 217 NW2d 37 (1974) this Court stated:

"Dr. Taver was an appropriately indorsed witness as the attending physician in a rape case. Proof of rape requires the showing of penetration. *People v Inman,* 315 Mich 456; 24 NW2d 176 (1946). And in addition, proof of rape requires the showing of use of force where the woman is past the age of consent. *Don Moran v People,* 25 Mich 356; 12 Am Rep 283 (1872). The attending physician just after the commission of the rape is normally the best witness to these facts. In fact attending physicians have even been designated as res gestae witnesses. *People v Dickinson,* 2 Mich App 646; 141

NW2d 360 (1966); *People v Kelly,* 30 Mich App 154; 186 NW2d 72 (1971); *People v Crable,* 33 Mich App 254; 189 NW2d 740 (1971).

"The physician attending the victim immediately after a rape case is in a position to testify to the victim's *condition* beyond what the record may show or beyond what is admissible under the business entry statute. Certainly the physician's posture in the case is quite different from a bookkeeper, for example, who may only be entering credits and debits in the normal course of business." (Emphasis added.)

As stated above, the examining physician in a rape case is a proper witness as long as his testimony may assist the jury in their determination of the existence of either of two crucial elements of the offense charged, (1) penetration itself and (2) penetration against the will of the victim.

In this case, the crime charged was statutory rape. The prosecution need not prove that the act took place against the will of the victim in this type of prosecution as the law presumes that fact if the victim is below the statutory age of consent. An expert opinion[1] of the examining physician on this element is then generally beyond the scope of admissible expert testimony.

Thus the remaining question in this case is whether or not the doctor should be permitted to testify as to the remaining essential element, penetration. The defendant argued that since the prosecutrix admits that a second rape occurred subsequent to the charged offense, any testimony the doctor may give is irrelevant and immaterial especially in view of the length of time that intervened between the alleged act and the physical examination.

---

[1] It would be only the doctor's opinion that would be inadmissible. He could still testify as to any physical conditions (*i.e.,* bruises, bleeding, lacerations, etc.) which he found upon examination.

We generally agree. The doctor in this case could not testify as to whether or not the prosecutrix had intercourse on the date in question. Medical science has not yet advanced to this point under these circumstances. His testimony should, under the facts of this case, be limited to the question of whether or not the complaining witness still had an intact hymen at the time of his examination. This fact itself is only relevant and material if the prosecutrix claims to have had an intact hymen prior to the alleged act.[2] Such is not the instant case. Accordingly, this Court feels that the defendant's objection to the doctor's testimony should have been sustained in this case.

It is also noted that in no event is the doctor permitted to lend his expert opinion testimony as to the crucial issue of whether or not the prosecutrix was actually *raped*[3] at a specific time and place.

By accepting as fact the prosecutrix's factual history and then testifying that in his expert opinion the medical examination supported and was consistent with that history, he is lending his medical opinion to support a claim made by the prosecutrix that is beyond the realm of his medical capabilities and expertise. The doctor is not a qualified expert on the question of whether or not the prosecutrix was *raped by the defendant* on the alleged date.

The evils of permitting such testimony is shown by the prosecutor's closing argument to the jury in this case. He argued:

---

[2] Such testimony would obviously be irrelevant where a married woman was the victim.

[3] Rape is a crime, defined by law, with specific elements comprising the offense. Most crucial of them is lack of consent of the victim. To this element the doctor could not testify.

"Dr. Racine testified he examined Barbara, he took a history from her, examined her and based on his training, experience and examination, he came to the conclusion that Barbara has, what he would call, a marital introitus which he said, would mean, there had been sexual intercourse."

It is obvious from the testimony elicited from the doctor and the prosecutor's closing argument that, in reality, the prosecutor is arguing to the jury that Barbara told the doctor she was raped on this date, the doctor testified that the examination supports this, and that, therefore, you have a medical expert who has testified that Barbara is telling the truth when she says the defendant raped her on May 23, 1970.

The error in this type of testimony and argument is obvious.

For the reasons stated in *People v McGillen #1, supra,* and the reasons set forth above, we reverse and remand for a new trial.

T. G. KAVANAGH, SWAINSON, WILLIAMS, and LEVIN, JJ., concurred with T. M. KAVANAGH, C. J.

M. S. COLEMAN, J. *(dissenting).* My opinion in *McGillen #1* concerning the voluntariness of defendant's statement and the *Miranda* objection is adopted in this matter. The same statements of Officer Haustein were introduced in the second *Walker* hearing before trial on the alleged May 23, 1970 rape. The matter has been discussed and will not be further belabored.

The only other ground for reversal cited by the majority opinion was the testimony of the physician, an issue which was not raised by either party on appeal and, therefore, not briefed. Perhaps this was because they, as I, saw little merit in such an objection.

In reversing defendant's second conviction, the Court has declared that certain testimony of the examining doctor constitutes reversible error. The Court says that the error is obvious. The trial judge saw no error, the Court of Appeals saw no error and I see no error.

On direct examination, the doctor said that his examination of the daughter disclosed that she had a marital vagina. On cross-examination, he agreed that this might result from causes other than sexual intercourse. He further said there was no evidence of sperm, blood or bruises.[1] On redirect he said his findings were consistent with the history given by the victim. On recross, the doctor said he accepted the history as true and that this was not contradicted by his examination.

In language heavy with hyperbole and light on specifics, the Court indicates that grave injustice has been done by admission of this testimony. The Court must realize that under the statute the prosecutor's proof must show penetration. The daughter claimed that intercourse had occurred. The doctor said his examination disclosed nothing to refute this story.

The Court states that the doctor's "testimony should be limited to the question of whether or not the complaining witness still had an intact hymen at the time of examination." This statement is unexplainable. The crime of rape is not proved or disproved by such evidence. The standard is penetration, however slight. It is penetration not defloration that the statute requires.

The Court further says, "in no event is the doctor permitted to lend his expert testimony" on the issue of whether a prosecutrix "was actually

---

[1] The examination was made eight days after the last rape and about two weeks after the first, the subject of this case.

*raped* at a specific time and place." The doctor in this case *did not so testify*—in fact, he said that the marital vagina was not inconsistent with some other explanation. It is not a matter in issue.

The Court's statement is put in language which indicates that it is a rule of law. If so, I could not subscribe to it. I believe that such testimony could and in many cases would be relevant. The Court's language is a gratuitous statement which hopefully the members of the Bar will regard as such.

The Court, citing testimony given by the doctor under cross-examination by defendant's attorney implies that he improperly authenticated the daughter's story. All that the doctor said was that his findings were consistent with the history given him by the daughter. He offered no opinion as to the truth of her story. The jury remained the final arbiters of the weight to be given the daughter's accusation.[2] By their verdict they indicated acceptance of her version. I see no reason to reverse that determination.

I would affirm the conviction.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.

---

[2] The jury also properly considered Barbara Jean's detailed description of the crime and the scene of the crime; defendant's shifting stories concerning the events of that day; character evidence; Rose DeLong's testimony that the defendant asked her to keep Barbara from going to a doctor and to ask Barbara to drop the charges; defendant's replies to the testimony of others.