PEOPLE v GERALD WELLS

Docket No. 45831. Submitted October 8, 1980, at Lansing.—Decided December 16, 1980. Leave to appeal applied for.

Gerald F. Wells was convicted of first-degree criminal sexual conduct, Saginaw Circuit Court, Gary R. McDonald, J. Defendant appeals, alleging that error occurred when the examining physician testified that in his opinion this was a legitimate case of sexual assault, that the statute which bars evidence of a complainant's past sexual conduct is unconstitutional, that the court erred by denying a motion for a psychological examination of the complainant to support the defendant's defense of consent, that the defendant's right to remain silent was violated by certain of the prosecutor's questions to a police officer regarding omissions in a statement the defendant had voluntarily given the police, and that the defendant was denied effective assistance of counsel. *Held:*

1. Because the defendant admitted having sexual intercourse with the complainant, the only element to which the examining physician could testify was whether penetration was against the will of the complainant. The doctor did not testify that the complainant was raped at any specific time or place or that he believed the complainant's story. He merely stated that in his expert opinion there had been penetration against the will of the complainant. No error occurred by the admission of this testimony.

2. The statute which bars evidence of a complainant's past

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 65 Am Jur 2d, Rape §§ 3, 68.

  81 Am Jur 2d, Witnesses §§ 244, 262.

[3] 65 Am Jur 2d, Rape §§ 82-85.

  81 Am Jur 2d, Witnesses §§ 537, 556.

  Modern status of admissibility, in forcible rape prosecution, of complainant's general reputation for unchastity. 95 ALR3d 1181.

[4] 65 Am Jur 2d, Rape § 107.

  Requiring complaining witness in prosecution for sex crime to submit to psychiatric examination. 18 ALR3d 1433.

[5] 21 Am Jur 2d, Criminal Law § 368.

sexual conduct is constitutional and does not violate a defendant's right to confrontation.

3. Denial of the defendant's motion for a psychological examination of the complainant was not an abuse of discretion.

4. The questions posed to the police officer regarding the defendant's voluntary statement to the police did not violate the defendant's right to remain silent. The defendant had expressly waived his right to remain silent, and the questioning of the police officer was designed to elicit the full extent of the defendant's statement.

5. Defendant was not denied effective assistance of counsel.

Affirmed.

1. RAPE — WITNESSES — EXPERT WITNESSES — EXAMINING PHYSICIANS.

The examining physician in a rape case is a proper witness as long as his testimony may assist the jury in their determination of the existence of either 1) penetration or 2) penetration against the will of the victim.

2. RAPE — WITNESSES — EXPERT WITNESSES — EXAMINING PHYSICIANS.

It was not error for a physician to testify that based upon his experience and examination it was his opinion that the case was a "legitimate case of sexual assault"; such testimony did not violate the prohibition against an examining physician testifying in his expert opinion that a victim was actually raped at a specific time and place.

3. RAPE — EVIDENCE — STATUTES — PRIOR SEXUAL CONDUCT.

The statute which bars evidence of a complainant's past sexual conduct and reputation concerning sexual conduct in a prosecution for criminal sexual conduct does not abridge the defendant's right to confrontation of witnesses (MCL 750.520j; MSA 28.788[10]).

4. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — EXAMINATION OF COMPLAINANT.

A trial court's denial of a defendant's motion for a psychological examination of a complainant in a trial for criminal sexual conduct was not an abuse of discretion where the defendant's theory was consent because the introduction of a general psychological profile as to one's sexual propensities would have little bearing on the issue of consent in any particular case.

5. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ — Rɪɢʜᴛ ᴛᴏ Rᴇᴍᴀɪɴ
     Sɪʟᴇɴᴛ.
     A defendant's right to remain silent is not violated by a prose-
     cutor's questioning of a police officer regarding specific omis-
     sions in a statement which the defendant has voluntarily given
     to the police.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczma- rek,* Prosecuting Attorney, and *Linda Berns Wright,* Appellate Prosecuting Attorney, for the people.

*James Krogsrud,* Assistant State Appellate De- fender, for defendant on appeal.

Before: V. J. Bʀᴇɴɴᴀɴ, P.J., and Aʟʟᴇɴ and Bᴇᴀsʟᴇʏ, JJ.

Pᴇʀ Cᴜʀɪᴀᴍ. On March 22, 1979, defendant was convicted by a jury in Saginaw County Circuit Court of first-degree criminal sexual conduct in violation of MCL 750.520b(1)(d)(ii); MSA 28.788(2)(1)(d)(ii). Defendant appeals as of right, raising six issues.

First, defendant claims reversible error occurred when Dr. Adler, the examining physician, testified at trial that he felt "this was a legitimate case of sexual assault". Defendant relies on *People v Mc- Gillen #2,* 392 Mich 278, 285; 220 NW2d 689 (1974), which states:

"that in no event is the doctor permitted to lend his expert testimony as to the crucial issue of whether or not the prosecutrix was *actually 'raped' at a specific time and place.*" (Emphasis added.)

Defendant contends that Dr. Adler's statement

falls within the *McGillen #2* prohibition and, although unobjected to, constitutes reversible error. However, defendant is mistaken. *McGillen #2* is distinguishable from the present case.

In *McGillen #2,* the defendant was charged with statutory rape. Therefore, the prosecution did not need to prove that the act took place against the will of the victim as the law presumes that fact if the victim is below the statutory age of consent. All that need be proven on a charge of statutory rape is penetration by the defendant. Additionally, in *McGillen #2,* the prosecutrix admitted that a second rape had occurred subsequent to the charged offense and prior to her being examined by the doctor. The prosecutrix testified at trial as to her version of the alleged statutory rape. The examining doctor then testified that he accepted as fact the prosecutrix's version of what happened and that, in his expert opinion, his medical examination supported and was consistent with the prosecutrix's version. The *McGillen #2* Court held this to be reversible error. The Court noted that in that factual situation the doctor was lending his expert opinion to support the claim made by the prosecutrix which is beyond the realm of his medical capabilities and expertise.

"The doctor in this case could not testify as to whether or not the prosecutrix had intercourse on the date in question. Medical science has not yet advanced to this point under these circumstances." *Id.*

The circumstances alluded to are that when only the element of penetration is relevant and the prosecutrix admits a subsequent rape prior to medical examination, the examining physician is not a qualified expert on the question of whether

or not the prosecutrix was raped by the defendant on the alleged date.

The defendant in the present case has overlooked the instructive language in *McGillen #2* which holds:

"[T]he examining physician in a rape case is a proper witness as long as his testimony may assist the jury in their determination of the existence of either of two crucial elements of the offense charged, (1) penetration itself and (2) penetration against the will of the victim." *Id.,* 284.

In the present case, the defendant admitted having sexual intercourse with the complainant. Therefore, the only element to which the examining physician could testify is penetration against the will of the victim. This is exactly what occurred. Dr. Adler testified that based upon his physical findings in examining the victim, the history received from the patient, the emotional condition of the patient, and his many years of experience and many cases of examining victims of alleged sexual assaults, it was his opinion that this was a legitimate case of sexual assault. Dr. Adler did not act as a human lie detector who gave a stamp of scientific legitimacy to the truth of the complainant's factual testimony concerning the alleged rape. *People v Izzo,* 90 Mich App 727, 730; 282 NW2d 10 (1979). Dr. Adler did not testify that he believed that the defendant raped the complainant at a specific time and/or place or that he believed the complainant's claim. Dr. Adler merely stated that in his expert opinion there had been penetration against the will of the victim. Thus, even had defendant entered a timely objection to Dr. Adler's statement, the trial court would not have erred by allowing the statement.

Defendant's second claim of error attacks the constitutionality of MCL 750.520; MSA 28.788(10), which bars evidence of a complainant's past sexual conduct and reputation concerning sexual conduct. It is well settled in Michigan case law that MCL 750.520j; MSA 28.788(10) is constitutional and does not abridge a defendant's right to confrontation. *People v Arenda,* 97 Mich App 678; 296 NW2d 143 (1980), *People v Kahn,* 80 Mich App 605; 264 NW2d 360 (1978), *People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977).

The defendant is incorrect in his assertion that the trial court abused its discretion in denying defendant's motion for a court-ordered psychological examination of the complainant. Defendant claims the sexual intercourse was consensual and that a psychological examination of the complainant would bear directly on the assertion of consent. However,

"introduction of a general psychological profile as to one's sexual propensities would have little bearing on the issue of consent in any particular case. Such a procedure would be analogous to the introduction of opinion evidence of a defendant's general criminal tendencies in order to prove commission of a certain crime. The practice of psychiatry has not as yet advanced to such an exact science whereby the probative value of such opinion testimony would exceed the prejudicial impact on the trier of fact." *People v Davis,* 91 Mich App 434, 441; 283 NW2d 768 (1979).

See also *People v Freeman (After Remand),* 406 Mich 514; 280 NW2d 446 (1979). *Davis, supra,* 442, and *Freeman, supra,* 516, also support the lower court's ruling upholding the physician-patient and social worker-client privilege concerning the complainant since defendant has not shown the privi-

leged information to be "demonstrably relevant" to the defendant's theory of consent.

Defendant's fourth contention of error involves the propriety of the prosecution's questioning of a police officer concerning the substance of the defendant's statement given to the police after defendant's arrest. Defendant does not dispute the voluntariness or admissibility of his statement to the police. Rather, defendant contends his constitutional right to silence was violated when the prosecutor asked the police officer if the defendant indicated in his statement that the complainant had consented to sexual intercourse. The police officer answered in the negative. Defendant's reliance on *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), is misplaced. *Bobo, supra,* 359, holds that, "We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation". *Bobo* and its successor cases hold that if a defendant chooses to exercise his or her right to remain silent, this silence cannot be used against the defendant at trial.

In the present case, defendant did not choose to exercise his right to remain silent. Defendant, after being given his *Miranda*[1] warnings, expressly waived his right to remain silent and chose to give a statement to the police. The statement was given to Detective Juras. A verbatim transcription was not recorded. Detective Juras testified at trial regarding the substance of defendant's statement. Detective Juras's testimony included statements by the defendant that after he and John LaPorte drove the complainant around Saginaw looking for her boyfriend (whom they failed to find), John

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

whispered to him, "Let's rape her [the complainant]", and that the complainant cried when they told her they were going to rape her. The defendant stopped the car and John made the complainant get out of the vehicle and made her take her clothes off. Defendant further indicated that after John had ripped off the complainant's brassiere, they made her lie down on the front seat and that he [defendant] was the first one to have intercourse with the complainant.

The prosecution's unobjected-to question concerning consent was designed to elicit the full extent of the defendant's statement and did not restrict the defendant's constitutional right to remain silent. The defense counsel also asked many questions of the police detective designed to elicit the full extent of the defendant's statement. These questions included whether the defendant ever specifically indicated that he raped the complainant, that he used force on the complainant, that the complainant resisted, or that he restrained the complainant. To each question Detective Juras answered that the defendant never specifically indicated that in his statement. The questioning of Detective Juras did not fall within the prohibition of *Bobo* and successor cases.[2] There was no restriction of defendant's right to remain silent but rather a defendant who expressly waived his right to remain silent and a complete disclosure of the defendant's subsequent statement to the police. No error occurred.

Defendant's remaining claim, ineffective assis-

[2] An exception to the *Bobo* prohibition exists in cases where the defendant does make a statement and the questions concerning defendant's silence relate to omissions from the statement. *People v Whitty,* 96 Mich App 403, 420; 292 NW2d 214 (1980), *People v Richendollar,* 85 Mich App 74, 82; 270 NW2d 530 (1978), *lv den* 405 Mich 820 (1979). This was the situation in the instant case.

tance of counsel, is also without merit. The defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protected his client's interest, undeflected by conflicting considerations. *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974), *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976).

Because we find no reversible error, defendant's conviction is affirmed.