# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY STEPHEN BOGGIANO,

        Defendant-Appellant.

UNPUBLISHED
August 10, 2017

No. 332450
Kent Circuit Court
LC No. 14-002363-FH

Before: HOEKSTRA, P.J., and MURPHY and K. F KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(c). For the reasons stated in this opinion, we affirm.

According to the evidence introduced at trial, defendant sexually assaulted the victim while she was sleeping in the early morning hours of December 27, 2013. Late the previous night, the victim enjoyed a few drinks at a local bar with her roommate, some friends, and defendant. When the bar closed, the group returned to the apartment that the victim shared with her roommate. The victim went to bed alone and fully-clothed. She did not consent to any sexual acts. However, she awoke around 5:00 or 5:30 a.m. to find herself naked from the waist down and defendant kneeling over the top of her, between her legs, with his pants down. The victim noticed her vagina was wet. The victim alerted her friends, and defendant left the apartment. The same day, the victim reported the incident to the police and underwent an examination by Alison Edidin, a sexual assault nurse examiner (SANE). Edidin observed an abrasion on the victim's perineum caused by something sharp, possibly a fingernail; and she testified that her findings were "consistent with a sexual assault." Forensic testing revealed the presence of saliva in swabs collected from the victim's vulvar and vaginal wall as well as low levels of male DNA in the swabs from the victim's vulvar, though the quantity of DNA was too low to allow comparison to a possible donor.

During a recorded interview with police, defendant fully admitted that he engaged in sexual activity with the victim. He told police: "I had oral sex with her, and I fingered her." Initially, defendant claimed that the victim consented to having sex with him. He conceded that the victim did not invite him to her room. Nevertheless, he told police that, when he entered the bedroom, the victim was awake, and he and the victim had a conversation during which she said

-1-

she was "cool" with "mess[ing] around." According to defendant, everything seemed fine until the victim "freaked out." However, defendant soon changed his story and admitted that he "made a mistake" on the night in question. He told police that the victim may not have been fully conscious and that they did not have a conversation during which the victim consented. The jury convicted defendant as noted above. Defendant now appeals as of right.

## I. REDACTED POLICE INTERVIEW

Defendant first argues that the trial court abused its discretion by admitting a redacted recording of defendant's interview with the police because the out-of-court statements made by the police officers during the interview were irrelevant, prejudicial, and impermissibly vouched for the victim's credibility. We disagree.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). If, as in this case, the claim of evidentiary error is nonconstitutional and preserved, "then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (quotation marks and citation omitted).

Defendant's argument is premised on *People v Musser*, 494 Mich 337, 353; 835 NW2d 319 (2013), wherein the Michigan Supreme Court addressed the admissibility of "out-of-court statements made in the context of an interrogation that comment on another person's credibility." In particular, recognizing that hearsay is generally inadmissible under MRE 802 and that witnesses may not comment on another person's credibility, the Court considered whether out-of-court statements by police during an interview might be admissible if they are not offered for the truth of the matter asserted, such as when the statements are offered to provide "context" for a defendant's relevant statements during the interrogation. *Id.* at 349-350. The Court declined to adopt a brightline rule automatically excluding these police statements; but, at the same time, the Court made clear that a mechanical assertion that the statement is necessary for "context" will not merit admission. *Id.* at 353-354. Instead, based on the rules of evidence, the Court outlined the following procedure for considering the admissibility of such statements:

> [W]here the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose. See MRE 401. Even if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper scope under MRE 105. Accordingly, to ensure a defendant's right to a fair trial, trial courts "must vigilantly weed out" otherwise inadmissible statements that are not necessary to accomplish their proffered purpose. [*Musser*, 494 Mich at 353-354 (citation omitted).]

In this case, following a motion by defendant, the trial court conducted a *Musser* analysis, and ultimately the jury received only a redacted version of defendant's conversation with police. In particular, the trial court found that many of defendant's statements and admissions during the interview were relevant and admissible. See MRE 801(d)(2); *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). Having determined that defendant's statements during the interview were relevant, the trial court weeded through the 75-page transcript to determine which, if any, of the police officers' statements were admissible for the proper purpose of providing context for defendant's relevant statements. Proceeding page-by-page and line-by-line, the trial court identified the statements to be redacted, reducing the portion played for the jury to about 27-pages of transcript.[1] Specifically, the trial court redacted police statements relating to their opinions of the victim's truthfulness and credibility as well as various statements relating to their opinions of defendant's truthfulness. More generally, the trial court also excluded statements relating to the officers' experience and which scenario they thought "makes more sense." The trial court also redacted statements in which the police related information they had received about the victim and defendant in terms of their respective character. And, the court redacted the officers' statements regarding what might happen with the case in terms of prosecution.

With regard to statements not redacted, the trial court determined that the remaining statements did not speak to the victim's credibility and that the statements were admissible to provide context because their probative value did not outweigh their prejudice effect. As contemplated by *Musser*, the trial court also gave an instruction before the redacted recording was played for the jury, informing the jury that only defendant's statements were evidence and that the detectives' statements and questions, which were not evidence, were "only being played to give context to the defendant's statements."

Despite the trial court's considerable editing of the interrogation and the court's limiting instruction, defendant argues on appeal that the trial court should have redacted additional statements. In making this argument, defendant takes portions of the officers' remarks out of context and asserts that the remarks somehow constitute impermissible vouching for the victim's credibility. Contrary to defendant's vouching claim, in the statements admitted by the trial court, the police never once stated that the victim was truthful, never stated that she had not lied to them, nor did they state that they believed her or that her story was credible. They offered no opinion as to the veracity of the victim's story. Instead, the various statements challenged by defendant are instances in which the police presented defendant with the basic factual allegations made by the victim and then asked for defendant's version of events. In other words, the police paraphrased the victim's statements to extract more detail from defendant.[2] The end result was a

---

[1] The prosecution and defense counsel stipulated to significant redactions, which the trial court considered and approved; and the trial court also considered additional redactions requested by defendant, some of which the trial court granted.

[2] For instance, the police confronted defendant with the victim statements to the effect that she did not "respond" to defendant, that defendant "did things to her that she was not consenting to,"

sequence of interrogation that gradually fostered defendant's revelation of what actually happened. See *Musser*, 494 Mich at 356 n 14. Without the officers' statements and questions, the evolution of defendant's story and the progression of his statements would have been unclear. *Id.* Thus, the trial court did not abuse its discretion by admitting the remaining statements challenged by defendant to provide context.

Overall, defendant's contention that the trial court abused its discretion lacks merit. The trial court reasonably applied the principles set forth in *Musser* to the recorded interview and redacted the irrelevant and unfairly prejudicial statements, leaving only the portions that contextualized defendant's statements for the jury's consideration. The trial court also provided an appropriate limiting instruction, alleviating the risk that the jury would consider the officers' statements and questions for an improper purpose. Defendant has not shown any error in the admission of the redacted interrogation, and he is not entitled to relief on this basis.[3]

## II. EXPERT TESTIMONY

Defendant next argues that the prosecutor committed misconduct by improperly eliciting expert opinion testimony from Edidin regarding the ultimate issue in this case, i.e., whether a sexual assault occurred. He contends that Edidin's testimony prejudiced defendant because it vouched for the victim's credibility and bolstered her allegation that she was sexually assaulted. Further, defendant argues that the trial court's instruction to the jury to disregard Edidin's testimony failed to cure the taint of the improper opinion testimony. We disagree.

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). A prosecutor may not knowingly offer inadmissible evidence or testimony. See *People v Dyer*, 425 Mich 572, 576; 390 NW2d 645 (1986). However, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Curative instructions are sufficient to cure the prejudicial effect of most prosecutorial errors, and "jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

Credibility is a question for the jury; and, for this reason, an expert may not offer an opinion on a defendant's guilt or a witness's truthfulness. *Musser*, 494 Mich at 349. In sexual assault cases in particular, an expert may not testify that a sexual assault occurred, an expert may

that she did not have "any conversation" with defendant in the bedroom, and that she woke-up and found defendant had "pulled [her] pants down and was touching [her.]"

[3] Moreover, we note that, even assuming some error, defendant has not affirmatively shown that it is more probable than not that the error affected the outcome of the proceedings. *Jackson*, 498 Mich at 257. Unlike in *Musser*, 494 Mich at 364, which hinged on the jury's assessment of credibility insofar as the defendant denied the alleged improper sexual conduct, in this case defendant admitted performing sexual acts on the victim and he conceded that there was no conversation during which she consented to these acts. Given his admissions, any error in redaction of the interrogation cannot be said to have affected the outcome.

not vouch for the victim's credibility, and an expert may not testify that a particular defendant is guilty. See *People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995); *People v McGillen #2*, 392 Mich 278, 285-286; 220 NW2d 689 (1974). However, medical professionals, including a sexual assault nurse examiner, may testify based on their examination of the victim that the victim's injuries are consistent with sexual assault. *People v McLaughlin*, 258 Mich App 635, 657; 672 NW2d 860 (2003); *People v Hunter*, 141 Mich App 225, 233; 367 NW2d 70 (1985).

In this case, after Edidin testified that she found an observable abrasion on the victim's perineum, the prosecution elicited the following testimony:

*Q*. What was your opinion as to this as a nurse examiner? Do you feel there was a sexual assault?

*A*. Yes.

*Defense counsel*: Objection. . . .

*Prosecution*: She's an expert. She can give her opinion.

*Defense counsel*: Not regarding whether or not an assault occurred, your honor. May counsel approach the bench?

*Trial court*: No. I've heard the question. I've heard the answer. The objection is overruled. Goes to weight; not admissibility. You may inquire with regard to why she has this opinion.

*Defense counsel*: May counsel approach?

*Trial court*: But of course.

[A bench conference was held off the record.]

*Trial court*: I'll ask the jury to disregard the answer. I'll ask the prosecution to restate the question, and you may proceed.

*Q*. Based on your examination with her and what you saw of her and her body, was it consistent with a sexual assault?

*A*. Yes.

Considering this exchange, the prosecutor's first question was improper because it elicited opinion testimony from the SANE on the issue whether a sexual assault occurred. See *Peterson*, 450 Mich at 352-353. However, defense counsel objected to Edidin's response. And, although the trial court initially overruled defense counsel's objection, the trial court subsequently ruled in defendant's favor and instructed the jurors to disregard Edidin's answer to the prosecution's question. We see no reason to conclude that the jury was unable to follow the court's instructions in this case, and the instructions alleviated any prejudice from Edidin's

improper testimony. See *People v Dennis*, 464 Mich 567, 581; 628 NW2d 502 (2001). Thus, defendant has already received the relief to which he was entitled. *People v Miller (After Remand)*, 211 Mich App 30, 43; 535 NW2d 518 (1995).

Insofar as the prosecutor rephrased the question, there was nothing improper in seeking the nurse examiner's opinion of whether her physical findings during the examination were "consistent" with sexual assault. See *McLaughlin*, 258 Mich App at 657; *Hunter*, 141 Mich App at 233. Edidin did not state that she believed the victim, she did not assert that a sexual assault occurred, and she did not testify that defendant was guilty. See *Peterson*, 450 Mich at 352-353. Defendant is not entitled to relief based on the prosecutor's good-faith introduction of admissible evidence. *Noble*, 238 Mich App at 660.

### III. MRE 803(4)

Defendant also contends that the trial court erred by allowing Edidin to testify regarding what the victim told her about the sexual assault. Defendant claims that Edidin's testimony was inadmissible hearsay that vouched for the victim's credibility. Defendant failed to object to this part of Edidin's testimony at trial, meaning that our review if for plain error affecting defendant's substantial rights. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Defendant has not shown plain error in Edidin's recounting of the victim's statements made for the purpose of medical treatment and diagnosis.

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible unless it fits within some exception to the hearsay rule. MRE 802. "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id.*

In this case, Edidin testified that she met the victim on the day of the sexual assault. Consistent with her standard practice when conducting sexual assault examinations, Edidin asked the victim about her medical history and what happened to her. Edidin then conducted a physical exam. In the context of Edidin's examination, the victim's recitation of the assault is properly considered a statement made for medical treatment.[4] *Id.* Thus, the victim's statements

---

[4] Defendant emphasizes on appeal that the victim went to the police *before* she was examined by Edidin. While initiation of an examination after a police investigation is underway may suggest that the examination was not intended for purposes of medical treatment, *People v Shaw*, 315 Mich App 668, 675; 892 NW2d 15 (2016), this is just one of many factors related to evaluating the trustworthiness of a declarant's statement, *People v Meeboer (After Remand)*, 439 Mich 310,

to Edidin were admissible under MRE 803(4). While defendant claims Edidin somehow vouched for the victim, Edidin did not testify that the victim's story was true. She simply provided a description of what she heard and what she observed. Defendant has not shown error. Further, given the overwhelming evidence of his guilt, including his own admissions, defendant has failed to establish that Edidin's recounting of the victim's statements affected defendant's substantial rights. *Coy*, 258 Mich App at 12.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant next argues that he was deprived of a fair trial because his trial counsel provided him ineffective assistance of counsel by failing to object to inadmissible testimony by Edidin and Detective Case Weston. We disagree.

Because a *Ginther*[5] hearing has not been held, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). To prevail on a claim of ineffective of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

With regard to Edidin's testimony, defendant first argues that counsel was ineffective for failing to object to her testimony recounting the victim's statements made during the sexual assault examination. However, as we have discussed, the victim's statements were admissible under MRE 803(4). Any objection by counsel would have been futile, and counsel is not ineffective for failing to make a futile objection. *Ericksen*, 288 Mich App at 201. Related to Edidin, defendant also contends that counsel should have objected to her improper testimony to the effect that a sexual assault occurred. However, the record shows that defense counsel did object to Edidin's testimony and in fact succeeded in obtaining relief for defendant insofar as the trial court instructed the jury to disregard Edidin's improper testimony. Defendant has not shown that counsel's performance was unreasonable in this respect. To the extent defense counsel did not renew his objection when the prosecutor rephrased her question to ask whether Edidin's examination findings were "consistent" with sexual assault, any such objection would have been futile because, as we have discussed, it was not improper for Edidin to testify, based on her examination of the victim, that the victim's injuries are consistent with sexual assault. See *McLaughlin*, 258 Mich App at 657; *Hunter*, 141 Mich App at 233. Again, counsel was not ineffective for failing to pursue a meritless argument. *Ericksen*, 288 Mich App at 201.

---

325; 484 NW2d 621 (1992). And, we do not find this factor dispositive in this case given the temporal proximity between the assault and the examination, which indicates that the victim had a legitimate interest in obtaining medical treatment at that time. See *id.*; cf. *Shaw*, 315 Mich App at 675 (finding the victim's statements to a doctor were not admissible under MRE 803(4) when police referred the victim for examination 7 years after the occurrence of the alleged sexual abuse).

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Turning to Detective Weston, defendant argues on appeal that counsel performed unreasonably by allowing Weston to testify during cross-examination that, in the course of interviews with the police, the victim "maintained the same story she told us initially throughout."[6] Assuming for the sake of argument that Weston's fleeting statement was inadmissible and that counsel performed unreasonably by prompting such testimony, defendant has not shown outcome determinative error in light of the overwhelming evidence of his guilt, including his admission that he performed oral sex on the victim and digitally penetrated her without her consent. Accordingly, defendant's claims of ineffective assistance are without merit. See *Trakhtenberg*, 493 Mich at 51.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Lastly, defendant argues that his first appellate attorney (who was also his trial attorney) provided ineffective assistance on appeal. In particular, after defendant filed his claim of appeal and after his attorney filed a brief, defendant obtained a new appellate attorney, who received leave from this Court to file a supplemental brief. Defendant's new attorney identified additional issues, which we have addressed above, including the claim that trial counsel was ineffective. Defendant's new attorney also claims that defendant's prior appellate counsel was ineffective for failing to raise these additional issues in defendant's initial brief on appeal. We disagree.

"The test for ineffective assistance of appellate counsel is the same as that for trial counsel." *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). Under this test, while defendant's first appellate attorney did not raise all of the arguments advanced by his second attorney, his first "appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." *Id.* Moreover, defendant cannot show prejudice. Given that defendant's second attorney raised the issues in question—and that we have considered those issues and found them to be without merit—the failure by defendant's first attorney to raise these matters was "insignificant" and certainly did not affect the outcome of the proceedings. See *id.* Defendant is not entitled to relief based on the performance of his first appellate attorney.

---

[6] Aside from his ineffective assistance of counsel claim, defendant challenges Weston's testimony on appeal as an evidentiary matter, claiming that his comment amounted to vouching for the victim and that the trial court erred by allowing this vouching testimony. However, this testimony was given during defense counsel's cross-examination of Weston, and defendant cannot "assign error on appeal to something his own counsel deemed proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). Thus, defendant's evidentiary challenge is without merit.

Affirmed.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly